(38 South. 438.)

No. 15,427.

BERNOS v. CANEPA.*

(March 13, 1905.)

EASEMENTS—ESTABLISHMENT—VIEW AND DRIP —OBSTRUCTION—DAMAGES.

1. The owner of real estate has the right to establish on that portion which he retains, and in favor of that portion which he sells, such servitudes as he thinks proper, his power in that respect being limited only by considerations of public policy; and the use and extent of such servitudes are regulated by the title by which they are established.

2. The servitudes of view and drip, when established merely by the destination du pere de famille, and without specific title, do not include the prohibition of building upon the adjoining property, which, being a continuous, nonapparent servitude, can be established only by title. When, however, the servitudes first mentioned are established by the owner by specific title, that last mentioned is included.

3. When the violation of the right of property is flagrant and malicious, exemplary damages should be awarded.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Walter Byers Sommerville, Judge.

Action by Mrs. Louis Bernos against J. B. Canepa. Judgment for plaintiff, and defendant appeals. Modified.

Charles Ferdinand Claiborne, for appellant. A. E. & O. S. Livaudais, for appellee.

## Statement.

MONROE, J. Plaintiff brings this suit to compel the defendant to demolish a certain "frame wall" or fence, and to recover damages for the alleged malicious deprivation and obstruction thereby of the enjoyment of the servitudes of view and of drip, to which, as

_____

*Rehearing denied April 10, 1905.

she alleges, her property is entitled. There was judgment in the district court, ordering the demolition of a portion of the fence, and condemning the defendant to pay $500 by way of exemplary damages. The defendant has appealed, and the plaintiff has answered, praying for an amendment of the judgment. The facts, as we find them from the evidence in the record, are as follows:

In 1893 the plaintiff purchased from Octave Morel and Septima, his wife, a lot of ground, of irregular shape, in this city, fronting on Bourbon street, between Ursulines and Hospital, and extending back in the direction of Dauphine. There was included in the purchase a cottage, so situated upon the rear of the lot as to project some five feet beyond what would otherwise be its unbroken upper side line, upon which side (towards Ursulines street) there was, and is, a certain "Lot No. 1," which also belonged to the Morels, by and between whom and the plaintiffs it was stipulated, in the act of sale to the latter, as follows, to wit:

"It is well agreed and understood between the parties hereto that the building in the rear of said property, known as the cottage, shall continue to enjoy the right of view and drip, as they now exist in favor of said cottage, and that said servitude shall so remain, to be enjoyed upon said Lot No. 1, as long as said property shall not be demolished or so changed as to materially alter its present condition."

At the date of the sale there were (as there are now) two windows in the cottage, opening on lot No. 1; i. e., one in the second room from the front, used as a bedroom, and another in the third room, used as a bathroom; and there was nothing whatever to interfere with the servitude of drip, and no other obstruction to the view from the windows mentioned, save a brick outbuilding, which stood on lot No. 1 at a distance of about 15 feet from the cottage. In November, 1903, defendant purchased lot No. 1 from Mrs. (Widow) Morel, and proceeded to build thereon a residence, the lower side of which is in front of, and perhaps 10 feet dis-

tant from, the upper side of plaintiff's cottage. As an appurtenance thereto, he proposed to establish a cistern in, or partly in the space between the buildings, and, for the accommodation of the cistern, requested plaintiff to cut off a portion of the front cornice of her cottage, which request she declined to accede to. Defendant then caused to be erected the structure complained of, which consists of pieces of scantling, say 4x7 inches, and 12 or 13 feet long, planted in the ground against the side of the cottage, with strips nailed across them horizontally from a point about four feet from the ground, upon which strips planks are nailed vertically so as to form what may be called a solid plank fence, the bottom of which is just below, and the top of which extends just above, the cottage windows. For the accommodation (?) of the windows, the fence is extended out at those points, and boxes are formed in which the window blinds may be opened and closed, the boxes being provided with bottoms, which are flush with the window sills, whilst the tops, above the tops of the windows, are open. This fence is built of second-hand material, more or less rough, irregular, and variegated in appearance, and it was extended around the corner of the cottage so as to cover that portion of the front which projects, in the manner stated, into the side of lot No. 1, and its effect, as built, is to deprive plaintiff's property of the enjoyment of the servitudes of view and light, and to interfere with its enjoyment of the servitude of drip. The defendant, moreover, established, near the upper front corner of plaintiff's cottage, at or about the place where he wished to put his cistern, an outside closet, which, according to his original plan and specifications, was to have been located in the rear of his lot and of the cottage, and the upper weather boarding of which, on the side next to the cottage, was left off, so that the effluvia from the vault would have escaped, through the opening, within five feet of the front gallery of the cottage. By direction of the board of health, the weather boarding has been nailed on, but the closet remains. The defendant undertakes to show that he built the fence with a view to training vines against it, but he also introduces testimony to the effect that he intended it to hold up cordwood. And the reasons which he gives for locating his closet where he has placed it, and for leaving the side partly open, are that the present arrangement gives him more room in the back of the yard under the shed, and that the leaving off of the weather boards was an oversight.

### Opinion.

There can be no doubt that the Morels, as the absolute owners of the entire property, had the right to establish, on the portion which they retained, and in favor of that portion which they sold, such servitudes as they thought proper, their power in that respect being limited only by considerations of public order; and that the use and extent of such servitudes are to be regulated by the titles by which they were established. Civ. Code, arts. 709, 716, 729, 743. The particular servitudes in question, being continuous and apparent (Civ. Code, arts. 727, 728), would have been established, under the circumstances, by the mere sale of the property in its then condition, though they had not been specially mentioned. Civ. Code, art. 769. But they would not, in that case, have included the right of prohibition of building on the adjoining lot, or of building above a particular height, which is a continuous, nonapparent servitude, and cannot be established, either by the destination du pere de famille, or by immemorial possession, but only by title. Civ. Code, arts. 505, 727, 728, 766, 770; Goodwin v. Alexander, 105 La. 658, 30 South. 102; Ribet v. Howard, 109 La. 113, 33 South. 103. It is true that Civ. Code, art. 771, provides that, "when a servitude is established, everything which

is necessary to use such a servitude is supposed to be granted at the same time, with the servitude," from which it might be argued that the "prohibition of building" would be included in a servitude of view, resulting from the destination made by the owner, since in such case the destination, by the terms of the Code, is "equivalent to title." Civ. Code, art. 767. But the articles 767 and 771 are to be read in connection with other articles, and more particularly with articles 727 and 728 (from which it appears that the prohibition of building, etc., is a continuous, nonapparent servitude) and article 766 (which declares that continuous, nonapparent servitudes can be established only by title). The servitudes claimed on behalf of plaintiff's property were, however, established by a title whereby the common owners of the property, upon which, as well as that in favor of which, they were established, stipulate that "the cottage shall continue to enjoy the right of view and drip, as they now exist in favor of said cottage, and that said servitude shall so remain, to be enjoyed, upon said Lot No. 1, as long as said property shall not be demolished or so changed as to, materially, alter its present condition." And this stipulation is the law which governs the rights of the parties to this suit, since the defendant's author, having parted with the right to interfere with the enjoyment by her vendee of the servitudes so established, could not thereafter have conferred such right upon the defendant. As the right of view from both the openings in the cottage existed when the servitude was established, it was unobstructed, save by a brick outbuilding, which was 15 feet distant, and, as the right of drip then existed, it was entirely unobstructed. It is clear, therefore, that the boxing in of these openings is a violation of plaintiff's rights, since it cuts off the view and light almost entirely, and so interferes with the servitude of drip that rain falling against or upon the side of the cottage is likely to collect upon the surface formed by the bottoms of the boxes and the window sills and overflow into the house. Whether the proximity of the "fence" (as we have called it for lack of a better term) to the cottage will interfere with the right of drip in other respects is not altogether clear. The carpenter by whom the defendant's house was built testifies that it will not, but, as he also testifies that the boxes around the windows will not interfere with the light in the rooms, his opinion is of no value, and it seems to us not improbable that if the scantling, which supports the fence, rests against the weather boarding of the cottage, and water which should be allowed to drip freely finds its way between, the tendency will be to produce dampness and decay. The plaintiff's rights in that respect will therefore be reserved. Whilst it cannot be said that the plaintiff has proved that she, personally, has sustained any actual damage, since it appears that the cottage, two of the three rooms of which have been rendered practically useless, is occupied by her daughter and son-in-law, with their family, nevertheless the invasion of her right has been so flagrant, and, we agree with the judge a quo in thinking, so malicious, that the amount awarded will not be disturbed.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reserving to the plaintiff the right to recover any further damage that she may have sustained since the filing of this suit, or that she may hereafter sustain by reason of the fence or wooden barrier erected by the defendant, and, as thus amended, affirmed; the defendant to pay the costs of the appeal.