ODOM, Justice.
 

 On June 6, 1919, Dr. W. M. McGalliard, Tony Benedito, Vincenzo Pizzolato, Antonio Pizzolato, Tony Chacha, Felix Cor-nova, Cormelo Bonadona, Mrs. Gilermo Palermo, and Joe Cataldo owned 11 small plots of land, the plots being numbered 1 to 11, inclusive. These lots, grouped together, comprise an area of some 35 or 40 acres of land. On that date, the then owners of the separate plots entered into a covenant for the drainage of their property, which covenant is evidenced by a written instrument signed by each before, a notary public in the presence of two witnesses. The instrument was recorded in the mortgage records of the Parish of Ascension, where the property is situated, on October 29, 1920. The written instrument contains the following stipulation, which sets forth the purpose and intent of the parties with reference to the drainage of the property:
 

 “Which parties jointly severally and individually declare that they have and do by these presents enter into a covenant and agreement for the mutual benefit
 
 of all the said hereinabove described eleven tracts of land
 
 each of the first numbered nine tracts aggregating an acreage of three and seventy five hundredths of an acre, and the tracts ten and eleven each having an area of four acres approximately, more or less,
 
 the object'and purpose of this covenant and agreement is to determine the methods of draining and keeping drained for all time to come the several eleven tracts of land herein
 
 described, and to determine the methods of assessing the cost and expense of maintaining said system of drainage.”’ (Italics are the writer’s.)
 

 The instrument further recites that the existing drainage of said tract of land “is
 
 *680
 
 from the front to the rear, that is from tract one thru tract two- — and ■ from tract two thru tract three, and from tract four thru tract five and so on to the end, all the tracts finally draining their waters into the Maginnis or Company Canal running along-side and in the rear of tract eleven”.
 

 It is further provided in the instrument that “the six ditches running thru and draining the tracts one to nine inclusive shall at all times remain open and undisturbed, and shall be kept open and plugged sufficient large and deep to take care of the drainage of said tracts the cost of cleaning and digging said six ditches shall be at the cost of the said nine tracts and the owners thereof”.
 

 It is further provided that, where the six ditches reach and enter Tract 10, “then from that point on thru tracts ten and eleven there shall be kept open at all times for the drainage of all said tracts five ditches”.
 

 The instrument shows that Joe Cataldo, relator in the present proceeding, was then the owner of Plots 10 and 11, and the record shows that he now owns them. Lot 11, owned by him, was adjacent to a large canal, referred to as the “Company Canal”, into which the water from each of the tracts was carried by ditches, and it was especially provided that the ditches should be kept open through the two tracts owned by Cataldo.
 

 Paragraph 6 of the covenant contains the following stipulation:
 

 “It being the intention of this covenant and agreement that all of said ditches shall at all times remain clean and open for the mutual benefit and drainage of all the tracts herein described.”
 

 In the latter part of 1920, the owners of Plots 1 to 9, inclusive, filed suit against Joe Cataldo, the owner of Plots 10 and 11, alleging that Cataldo, in utter disregard and violation of the agreement entered into, had “closed and dammed three of the said five ditches entering and running through said tracts number ten and eleven, thus closing, impeding and obstructing the drainage of petitioners’ nine described tracts of land, to their great and irreparable injury and damage”.
 

 They prayed that Joe Cataldo, the owner of Tracts 10 and 11, be enjoined from in any manner placing, or causing to be placed, any dams or obstructions of any kind or nature in any of the said five ditches entering and running through his tracts of land, and enjoined and prohibited from interfering with the drainage of petitioners’ land, as provided for in said covenant and agreement.
 

 On November IS, 1921, there was judgment in favor of plaintiffs and against the defendant Joe Cataldo, enjoining and restraining the said Cataldo or any of his agents and employees “from in any manner placing or causing to be placed any dams or other obstructions of any kind or nature whatsoever in any of the said five ditches entering into and running through his tracts of land Nos. 10 and 11”, and further restraining the defendant from in any manner interfering with the drainage of the lands of the plaintiffs, as provided for
 
 *682
 
 in the covenant and agreement of June 6, 1919.
 

 On February 7, 1923, the plaintiffs, alleging that Joe Cataldo, the defendant in the injunction proceeding, had violated the orders of the court as set forth in the judgment rendered on November 15, ' 1921, ruled him to show cause why he should not be punished for contempt. The defendant through counsel accepted service of this rule on February 8, but, so far as the record shows, the defendant made no appearance in court, and no further action was taken.
 

 On February 25, 1928, the plaintiffs again ruled defendant to show cause why he should not be punished for contempt, alleging that he had disregarded and violated the court’s order rendered on November 15, 1921, enjoining him from closing the ditches through his land and from interfering with the drainage of their property. Service was accepted on the same day, and on the following day the defendant filed answer. But, so far as the record discloses, this rule for contempt was never tried.
 

 On May 15, 1942, the defendant was again ruled to show cause “why he should not be adjudged guilty of contempt of the authority of this Court by his violation of the judgment rendered herein on November 15, 1921 perpetuating and making final, said injunction which is now in full force and effect, and be punished by fine and imprisonment according to law”.
 

 The defendant filed the following exceptions: (1) An exception to the form of the motion; (2) an exception to the jurisdiction; (3) an exception of vagueness; (4) an exception of non-joinder of parties plaintiff; and (5) exceptions of no right or cause of action. The trial judge overruled the first exception and referred the others to the merits. The defendant then filed an answer and reconventional demand. The rule for contempt was tried, evidence was adduced, and there was judgment against the defendant in rule, finding him guilty of contempt, and as punishment he was sentenced to imprisonment in the parish jail for 30 days. The exceptions which had been referred to the merits were, in effect, overruled.
 

 The defendant in rule applied to this court for writs, which were granted.
 

 Exercising the supervisory powers conferred upon this court by Section 10, Article VII of the Constitution of 1921, we granted the writs applied for, for the sole purpose of reviewing the record to see whether the court which adjudged relator guilty of contempt had jurisdiction and whether the proceedings leading up to the issuance of the final order and sentence were regular.
 

 A rule for contempt is in the nature of a criminal prosecution, and this court will not review the facts on which a judgment of “guilty of contempt” was rendered by the district judge. Such judgment cannot be annulled unless it is found that the court had no jurisdiction or power to-make the order which was disobeyed or unless it disregarded the rules of procedure prescribed by law in proceedings for contempt. Perrault v. Edwards, 170 La. 671, 129 So. 125, and cases there cited; Woodard v.
 
 *684
 
 Johnson, 178 La. 501, 152 So. 65; State ex rel. Williams v. Louisiana Public Service Commission, 161 La. 293, 108 So. 487.
 

 But, where it is made to appear that the court, acting arbitrarily and without observing the sacramental formalities of law, imposes a sentence for contempt, this court, under its supervisory power, will prohibit the execution of the sentence upon the ground that due process of law was not observed. In relator's application for writs, he alleged that the proceedings leading up to his conviction and sentence were not regular. His first exception related to the form of the motion or rule for contempt. His complaint under this exception is that the rule filed by the plaintiffs was not in conformity with the Pleadings and Practice Act, in that the allegations of the rule were not set out in separate paragraphs. The Pleadings and Practice Act, Act No. 27 of 1926, relates to the conduct of civil cases in the district courts of this state, other than appeals from justice of the peace courts. It does not relate to rules for contempt for violating the orders of the court.
 

 Relator excepted to the jurisdiction of the court. Clearly there is no merit in this exception, for the reason that the rule for contempt was filed in the same court which granted the injunction.
 

 The exceptions of vagueness, of non-joinder of parties plaintiff, and of no cause or right of action arise out of relator’s contention that there was nothing to show who the plaintiffs in rule were. The style of the original suit for injunction was “Vincenzo Pizzolato, et als. v. Joe Cataldo”. The motion or rule for contempt bears the same title as the injunction proceeding, and was filed by Blum and LeBlanc, “attorneys for Vincenzo Pizzolato, et als, plaintiffs in the above numbered and entitled cause”. Relator alleges in his application that Vincenzo Pizzolato withdrew from the proceeding, and therefore he was not informed as to what parties were proceeding against him in the contempt proceeding. He alleges in his application and contends in his brief that the proceeding was carried on purely in the name of “et als.”, and that he did not know who the “et als.” were.
 

 His contention is that he was-entitled to be informed who the “et als.” were. The proceeding for injunction sets out the names of each of the plaintiffs in that suit, so that the information which relator says should have been furnished him could have been found by referring to the pleadings in that proceeding. It is true that Vincenzo Pizzolato did withdraw from the proceedings, but his formal withdrawal was filed, after the present rule was tried on its merits.
 

 Relator alleged, and the record shows, that some of the original petitioners had died and others had sold their lots, and that therefore those who now owned the property had no cause or right of action against him for violating the provisions of the injunction. Four of the parties to the. original injunction suit, as well as three parties who have since acquired lots involved, actively participated -in the rule for contempt. Relator’s contention seems to be that those who were not owners of the property at the time the covenant was en
 
 *686
 
 tered into and at the time the injunction ¡proceedings were brought had no cause or right to demand that he be held in contempt for violating the provisions of the injunction.
 

 There is no merit in this contention, for the reason that the covenant entered into by the original owners of the property was one which ran with the land. The covenant shows on its face that it'was entered into ■not only for the benefit of the then owners of the land, but for the benefit of the land itself. It recites that it is entered into for the mutual benefit “of all the said herein-above described eleven tracts of land”. Clearly, therefore, the present owners of the land have an interest in demanding that Joe Cataldo, one of the parties to the covenant, and relator in this proceeding, obey the order of the court prohibiting him from interfering with the scheme and system for draining the land, as set out in the covenant.
 

 In his return the trial judge denies that the rule for contempt was carried on merely in the name of “et ais.”, and says that he permitted the rule to be prosecuted by those who owned the land and who necessarily had an interest in seeing that the court’s order was obeyed. t
 

 We find no merit in any of the exceptions filed by relator, and no merit in the argument made by his counsel in support of them. Clearly the court had jurisdiction in the premises, and we find no irregularity, or illegality in the proceedings leading up to the judgment and sentence.
 

 For the reasons assigned, the judgment under review is affirmed at relator’s costs.