43 So.2d 673

**HOLLOWAY v. RANSOME et al.**

No. 38726.

Dec. 9, 1949.

Louis H. Marrero, III, Marrero, for defendants and appellants.

John E. Fleury, Gretna, Willis C. McDonald, New Orleans, for plaintiff and appellee.

HAWTHORNE, Justice.

Defendants and appellants, Clyde Ransome and Ernest E. Moise, have appealed devolutively from a judgment in favor of plaintiff and appellee, Ernest James Holloway, enjoining and restraining the defendants from continuing with the construction of any building to be used for commercial purposes on Lot L of the Kostmayer Subdivision in the Parish of Jefferson, Lot L being the front portion of the original Lots C and D of the subdivision, as per plan of Eugene C. Graveley, surveyor, attached to an act before George C. Walshe, notary public, on August 17, 1915.

Plaintiff acquired Lot 7 in the Kostmayer Subdivision by notarial act on February 4, 1938, from the Dryades Building & Loan Association, and among the restrictions on the use of the property found in the deed we note the following: "The purchaser agrees to follow restrictions, which the vendor agrees to embody in all contracts: * * * That he will not sell, lease, or use said property, for business or commercial purposes. * * *"

As a cause of action, plaintiff alleges that he is the owner of Lot 7 in the Kostmayer Subdivision; that the defendants are the owners of Lot L in the same subdivision; that in plaintiff's deed of acquisition of his lot there are certain restrictions as to the use of the property; that these restrictions not only are applicable to his property but also are applicable to all prior sales of lots or portions of ground in the subdivision; that the Kostmayer Subdivision is strictly a residential section, and that the defendants are violating the restrictions as to the use of the property in that they are now erecting on the lot owned by them a building in which they propose to conduct, operate, and maintain a commercial business, a fish market.

Defendants in their answer admit that they are the owners of Lot L; that they propose to use the lot for business and commercial purposes, and that they are erecting thereon a building for the purpose of operating a commercial business which they designate as a "seafood establishment". They deny that they are violating any restrictions as to the use of the lot owned by them, and that they are in any way restricted

from using the property for commercial purposes, since their deed of acquisition does not contain any such restrictions.

At the hearing in the lower court, after which the judgment granting the preliminary injunction was rendered, plaintiff filed in evidence his deed of acquisition of Lot 7 with the restrictions therein as to its use, which we have quoted hereinabove, but filed no other deed in his chain of title. He filed several other deeds or conveyances of other lots in the subdivision, made by and to persons who are not parties to this suit. In these deeds there are embodied certain restrictions as to the use of the property described therein, and in several of these instruments the purchaser obligated himself, among other things, not to use the property for commercial purposes, and the vendor in the latter instruments, John G. Kostmayer, agreed to embody these restrictions in all contracts.

Defendants in support of their contention also offered and filed in evidence numerous acts of sale covering lots in the subdivision other than those owned by the parties to this suit, and in these deeds there appear no restrictions as to the use of the property. They also filed in evidence their deed of acquisition and all deeds in their chain of title back to John G. Kostmayer, who, according to defendants' brief, was the original owner and subdivider of the tract of land now known as the Kostmayer Subdivision. (This statement in the brief is in no way negatived by anything in the rec-

ord.) There is no restriction whatsoever as to the use of the property described in defendants' own deed, nor is there any such restriction in any of the deeds in their chain of title back to Kostmayer. On the contrary, in defendants' own deed we find the following provision: *"Property can be used for commercial no restrictions in title."* In the record we find also a map or plat of the Kostmayer Subdivision, on which no restrictions as to the use of the property are shown.

 Restrictions upon the use to which real property may be put have been likened by this court to servitudes, and the Civil Code recognizes the validity of a servitude similar in character to the restrictions sought to be enforced in the instant case.

In the case of Ouachita Home Site & Realty Co., Inc., v. Collie et al., 189 La. 521, 179 So. 841, 842, there was a stipulation in the defendants' chain of title to the property that it could be used only for residential purposes. In recognizing the validity of this restriction as to the use of the property, this court in the course of its opinion had this to say:

 "While a condition of perpetual inalienability of real estate under our law is void as putting property out of commerce and contrary to public policy, there is nothing in our law which forbids contracts for the use or nonuse of real estate, provided the use or nonuse of the property be not contrary to good morals or the public welfare. * * *

\* \* \* \* · \* \*

"*Restrictions upon the use to which real property may be put may be likened to servitudes which are specifically recognized and provided for under the Code,* and it cannot be disputed that a servitude legally established and valid in character is enforceable. Article 709 of the Civil Code provides in part:

" 'Owners have a right to establish on their estates, or in favor of their estates, such servitudes as they deem proper; provided, nevertheless, that the services be not imposed on the person or in favor of the person, but only on an estate or in favor of an estate; and provided, moreover, that such services imply nothing contrary to public order.'

"And Article 728 of the Civil Code expressly recognizes *the validity of a servitude similar in character to the restrictions sought to be enforced in this case.* The Codal article provides:

" 'Again, servitudes are either visible and apparent or nonapparent.

" 'Apparent servitudes are such as are to be perceivable by exterior work; such as a door, a window, an aqueduct.

· " 'Nonapparent servitudes are such as have no exterior sign of their existence; such, for instance, *as the prohibition of building on an estate, or of building above a particular height.*' (Writer's italics.)

■ "Under the jurisprudence and Codal articles to which we have referred, we do not think it can be disputed that building restrictions which restrain the use of real property for commercial purposes by prohibiting the construction of any building other than a residence or residences, and which insure a high type of construction by placing a minimum value upon any residence that may be built thereon, are not unreasonable and are not contrary to good morals, public order or express law, and, hence, they are not invalid and unforceable, since the restrictions are upon the use and not upon the alienability of the property." (Italics ours.)

■ Although building restrictions which restrain the use of real property are valid and enforceable since they fall within the provisions of Article 728 of the Civil Code, it is equally well settled by the provisions of Article 766 of the Code that such restrictions as to the use of real estate must be established by title. Article 766 provides:

"Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.

"Immemorial possession itself is not sufficient to acquire them. \* \* \* "

See also Goodwin et al. v. Alexander, 105 La. 658, 30 So. 102, and Ribet v. Howard, 109 La. 113, 33 So. 103.

In the instant case, plaintiff relies principally on the restriction against the use of the property for commercial purposes found in his own deed from Dryades Building & Loan Association, and does not trace

his title back to John G. Kostmayer, the original owner and subdivider of the tract of land known as the Kostmayer Subdivision. What the effect of the restriction in a deed from Kostmayer conveying plaintiff's property would have been is not presented in this case, and is a question we are not called upon to decide.

■ Defendants, on the other hand, have filed in evidence all deeds in their chain of title back to the original owner of the subdivision, and in none of these deeds is there any restriction or prohibition against the use of this property for commercial purposes. On the contrary, defendants' own deed specifically provides that the property is sold without restrictions in title and can be used for commercial purposes. Under these circumstances, the judgment of the lower court granting to plaintiff a preliminary injunction must be reversed, for the defendants are not bound by restrictions which do not appear in their title.

As pointed out hereinabove, the plaintiff offered deeds affecting other lots in the subdivision which contained the restriction, and the defendants likewise offered deeds affecting other lots in the subdivision which did not contain the restriction. This evidence therefore can have no effect on the result in this case.

■ We do not intend to hold that such building restrictions may not be validly enforced in a proper case. As was said in Alfortish et al. v. Wagner, 200 La. 198, 7 So.2d 708, 711: "* * * the jurisprudence of this State is well settled that stipulations in title deeds providing for building restrictions (such as the one contained in the defendant's title) are valid and enforcible where the restrictions have been inserted in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniformity in the improvements. [Citing Ouachita Home Site & Realty Co. v. Collie et al., supra, and other authorities.] These cases further hold that restrictions of this sort are covenants running with the land; that they are inserted by the original vendor for the benefit of the contiguous landowners whose titles contain similar covenants and that injunction is the proper remedy by which violations of the covenants may be restrained." See also Salerno et al. v. De Lucca, 211 La. 659, 30 So.2d 678.

For the reasons assigned, the judgment appealed from is reversed, and plaintiff's suit is dismissed; plaintiff-appellee to pay all costs.

FOURNET, C. J., absent.