JANVIER, Judge.
Though counsel for plaintiff and counsel for defendants in their respective briefs and in oral argument declare that this is an action in boundary, the fact is that the location of the boundary between the property of plaintiff and that of defendants is not in dispute, and the controversy results not from the necessity of locating the boundary but from the contention of defendants that á brick wall, which has been erected admittedly on the property of plaintiff, was placed there with plaintiff’s consent.
Plaintiff, Floyd F. Stinson, is the owner of a residence in New Orleans, bearing the municipal number 4729 Carondelet Street, in the square bounded by Bordeaux, Valence and Baronne Streets, and measuring 46 feet front on Carondelet Street by a depth of 118 feet between equal and parallel lines.
The defendants, Mr. and Mrs. Samuel F. Elrod, are the owners of the adjoining residence bearing municipal number 4725 Carondelet Street.
During the latter part of the year 1948, plaintiff, Floyd F. Stinson, and Mrs. Elrod discussed the question of replacing the fence, which then divided the properties and which was on the proper boundary line, with a brick wall, and it was agreed that Mrs. Elrod would undertake the construction of the wall and would pay the cost thereof and that Stinson would reimburse her to the extent of $125. The parties well knew that the cost of the wall would be substantially in excess of $250 and they gave different reasons for the agreement that Stinson would pay only $125, which was much less than one-half of the estimated total cost.
Stinson says that he saw no need for the new wall and that he could not afford to pay *293 for his half of it, and that therefore he gave his 'consent only 'because the Elrods wished to have the new wall and were willing to pay the additional amount.
Mrs. Elrod asserts that it was discovered that if the brick wall should be placed on the proper boundary line, there would not be sufficient width between it and the El-rod house for an automobile driveway, and that accordingly Stinson agreed that the wall might be placed' on his side of the boundary line if the Elrods would pay the entire cost less the $125 contribution which Stinson would make.
The wall was erected and paid for by the Elrods at a total cost of $900, and it was placed entirely on the property of Stinson. The exact time at which the wall was completed does not appear, but about three months after its completion Stinson complained to Mrs. Elrod that the wall was on his property and he demanded its removal. When the Elrods refused to comply with this demand, Stinson, on August 31, 1950, filed this suit against them. He alleged that there was necessity for the fixing of the boundary line and he prayed that there be a judicial fixing of this line and that a surveyor be appointed for that purpose.
Defendants answered, admitting that the said wall encroached upon the property of plaintiff but that, as already stated, plaintiff had agreed that it might be constructed in that location. Defendants then averred that the said wall had cost $900 and that the demolition thereof would cost an additional $225, and they prayed, as plaintiffs in reconvention, that if it be held that the wall must be removed, they recover judg-ent in reconvention against plaintiff in the sum of $775, the amount they had paid on the cost of the wall, plus $225 as the cost of demolition. Defendants prayed for a trial by jury. The jury rendered a verdict ordering that the wall be removed and that defendants recover judgment against plaintiff in the sum of $100.
On a rule to tax costs the District Judge fixed the fee of one of the surveyors, J. J. Krebs, at $50 and the fee of the other surveyor, E. L. Eustis, at $125 and, assessing these fees as costs, ordered that plaintiff pay one-half and the defendants the other half, and further ordered that- in all other respects each party * * * bear their own costs.” The District Judge then rendered judgment based on the verdict of the jury, ordering the defendants, Mr. and Mrs. Elrod to remove the wall and also rendered judgment in their favor against plaintiff, Floyd F. Stinson, in the sum of $100.
From this judgment defendants appealed suspensively to this Court, and plaintiff has filed answer to this appeal.
There can be no doubt that, insofar as the judgment orders the removal of the wall, it is correct. As already stated, there is no dispute as to where the division line of the two properties is located, and there is no dispute over the question of whether there is an encroachment on the property of plaintiff. Defendants admit that there is. Consequently, defendants cannot be permitted to insist-that the wall remain where it is unless they can show that they have acquired the right to maintain the wall in its present location as the result of a servitude in favor of the property which they own, and this they have not shown. They did not acquire such right by prescription nor by title. It is conceded that the wall ■had been in its present location only a little more than one year when the suit was filed and, assuming for the moment that the right to maintain a partition wall entirely on the property of a neighbor is a continuous apparent servitude, as such it could be acquired by prescription only after a lapse of ten years. LSA-Civil Code, Art. 765.
In view of the decision of the Supreme Court in Ogborn v. Lower Terrebonne Refining & Mfg. Co., 129 La. 379, 56 So. 323, it is not at all certain that such a servitude should be classified as -continuous and apparent. In any event, however, since it was not acquired by prescription, it could only, be acquired by title, or by what is known as the “destination du pere de famille.” The facts in no way resemble those from which result this “destination”. LSA-Civil Code, Art. 767.
 Consequently, unless there is a title, there is no servitude. The title by which a servitude may be established is an act “by which property can be transferred”. *294 LSA-Civil Code, Art. 743. And surely it cannot be successfully contended that real property can be transferred by verbal agreement.
However, our conclusion that the plaintiff may demand that the wall must be removed, does not fully dispose of this litigation, for we conclude from the record that the plaintiff did verbally agree that the wall might be placed where it is and that, as a result of that agreement, the defendants constructed the wall almost entirely at their own expense, and we feel that since plaintiff insists on its removal, he should be required to reimburse defendants for the useless expense which his receding from his agreement has caused them.
This conclusion, that plaintiff had agreed that the wall might be placed where it now is and that he knew when it was under construction that it was entirely on his property, is not necessarily contrary to the conclusion reached by the jury. As a matter of fact, the jury's verdict which awarded $100 to defendants seems to result from the same view which is held by us, that something should be paid by plaintiff to defendants for causing them the expense which will result from the change of mind of plaintiff. The jury erred only in not awarding defendants a sufficient amount. And the evidence amply warrants the conclusion that plaintiff agreed and well knew that the wall would be placed entirely on his property.
Mrs. Stinson says that Mrs. Elrod did not discuss with her the location of the wall.
Mr. Stinson, the plaintiff, said that it was always his understanding that the fence would be erected on the property line, and he added:
“At first, I didn’t want to build a fence, I had one there already. Finally-Mrs. Elrod said if I would give her $125, she would take the fence there and some- wisteria vines in the back end and take -care of everything, building the fence and survey and everything. I told her I couldn’t give her the cash, to wait six months and I would give her a check every month until $125 would be paid.”
On the other hand, several witnesses testified on behalf of defendants. Mrs. Margaret Call, a neighbor, said that she heard the conversation concerning the proposed construction of the wall and that while she was at the residence of Mrs. Elrod,
“Mr. Stinson came in and told Mrs. Elrod it was all right to go ahead with the fence and take the needed inches * * * »
James E. Slatten, the contractor who was employed to build the fence but who sublet the contract to Louis Edwards, says that he thought that Stinson was present when the fence was being “staked out.”
Mrs. Ercilia Elrod Leny, daughter of the Elrods, says that she heard the conversation concerning the fence, adding:
“ * * * Mr. Stinson agreed to let mother have the necessary inches to erect the fence, because -had he not the fence could not have been erected because that is our only driveway and the brick fence you could not have been able to go in and out, and I am quite sure it never would have been erected had he not given her the necessary inches.”
Louis Edwards, who actually constructed the fence, says that when they were staking it out :
“The gentleman (plaintiff) next door and Mrs. Elrod all was out there,”
and
“They showed me where to run it, * * * ”
When asked if he was certain that it was plaintiff who was present, he said that he thought it was, in fact he was almost sure, “but he wasn’t dressed like he’s dressed now.”
The record shows that the plaintiff was employed by a local sightseeing concern, and no doubt wore uniforms when driving or giving lectures on one of its busses.
Edwards also said:
“ * * * both people on each side * * * was there, they were all satisfied when I got through lining it off * * * ”
*295 Mrs. Elrod said that:
“At first we didn’t know that we couldn’t erect the fence but when we went to measuring the fence then we found out it would close my driveway, and I brought Mr. Stinson, I asked him to come over again, he did, and then we discussed erecting the fence and explained to him we wouldn’t be able to put the brick fence unless we had put it on his property, so then he wasn’t to pay me the full amount of money, he paid $125 and I was to pay the rest of the money, it was $775.”
It must be remembered that the fence was being constructed on the property of Mr. Stinson and that he resided there during its construction. We cannot be persuaded that, while this work was going on, he was not aware of the fact that the wall was being placed on his side of the line on which the original fence had been located for many years.
Furthermore, he paid.the $125 which he had agreed to pay in four installments, all of which payments were made after the completion of the work. In fact, the last payment was made more than four months after its completion. Surely he would not have continued to make these payments had he not agreed that the wall might be placed where it was.
Our conclusion is that Stinson agreed that the fence might be built where it now is.
The result is that since Stinson has changed his mind and now insists that the fence be moved, he must reimburse defendants for the expense to which they have been unnecessarily put. We do not wish to be understood as holding that in any case in which one neighbor verbally agrees that a partition wall or fence may be placed on his side of the proper boundary, he must allow it to remain there indefinitely or else pay the entire cost of erection or demolition. All that we hold is that, where such a verbal agreement is made, the neighbor who goes to the expense of building the fence or wall is justified in assuming that it will be allowed to remain for a reasonable time and that he will not be expected immediately after erecting it to remove it at his cost and at the whim of the neighbor who had agreed that it might be 'built.
Mrs. Elrod said that the total cost of constructing the wall was $900, and the contractor, who undertook the work and then sublet it for $700, said that he was paid $900 by Mrs. Elrod. However, Stinson insists that he was told by Mrs. Elrod that the cost would be only four or five hundred dollars.
The checks which were given by Stin-son to Mrs. Elrod are in evidence, and on the reverse of two of them are notations, made in a handwriting which Mrs. Elrod admits is hers and which indicate that between Stinson and Mrs. Elrod it was understood that the wall would cost $450. One of these notations read as follows:
“Payed $100/00 on Brick fence bet. property 4729 & 4725 Carondelet St. agreed by owners F. S. & G. A. E. * * * agreed on fence cost was $450.00 bal. owed by F. S. $25.00 as agreed by Mr. GAE.”
The other notation, also admittedly in the handwriting of Mrs. Elrod, reads:
“final payment of $125.00 for community fence which cost $450.00.”
From these notations we conclude that, whatever may have been the actual cost of constructing the wall, the agreement between the parties contemplated a wall to cost $450. Consequently, since Stinson has already paid $125 of that total cost, he must pay to the Elrods the balance of the contemplated cost, that balance being $325.
There is evidence in the record given by the contractor to the effect that the removal of the wall will cost from $250 to $300 “without checking it very close.” However, defendants in their reconven-tional demand have prayed for only $225, and therefore, on this item, their recovery must be limited to that amount. Thus the award in favor of Mr. and Mrs. Elrod as plaintiffs in reconvention should be increased to $550.
Since it is evident that there has never been any dispute over the location of the boundary and that therefore there *296 was no necessity for surveys, it follows that the cost of the surveys must he borne by plaintiff. Where the defendant in an action in boundary contends that there is no necessity for a survey and it is found that no such necessity existed and that the matter in dispute in no way involved the location of the boundary, article 663 of our LSA-Civil Code has no application.
There is no explanation given for the fact that Mr. Elrod did not appear as a witness. Ordinarily the failure of such a witness to appear might weigh rather heavily against his side of the controversy. However, the testimony of all of the other witnesses on both sides makes it abundantly clear that the entire matter was negotiated by Mrs. Elrod and no witness even suggests that Mr. Elrod had anything whatever to do with making or carrying out the agreement as a result of which the wall was constructed'.
The judgment appealed from is amended by increasing the amount awarded to defendants, Mrs. Geraldine Lapara, wife of/and Samuel F. Elrod, to $550, and as thus amended, it is affirmed, plaintiff to pay all costs.
Amended and affirmed.