125 So.2d 154

B. I. McGUFFY

v.

Jessie Goldman WEIL and Mathilde

Goldman Schochet.

No. 45288.

Dec. 12, 1960.

McHenry, Snellings, Breard & Sartor,. Monroe, for applicant

Soloman S. Goldman, New Orleans, for defendants-respondents.

SANDERS, Justice.

This is a declaratory judgment proceeding.[1] In it, the plaintiff seeks a decree that:

---

1. LSA–R.S. 13:4232 provides: "Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The existence of a controversy was admitted in the pleadings, and no issue as to the right of the plaintiff to proceed under this Act was raised by the par-

the property owned by him in Stubbs Place Addition to the City of Monroe is free of the restriction on its sale and use which appears in an authentic instrument dated June 13, 1922, recorded in the mortgage and conveyance records of Ouachita Parish.

After hearing, the district court granted the demand of the plaintiff and held that the property was unencumbered by the restriction. On appeal, this judgment was reversed; and the Court of Appeal decreed that the recorded instrument created a real obligation, or covenant, running with the land.[2] On application of the plaintiff, we granted a writ of certiorari to review the judgment, and the matter is now presented for determination.

The facts are not in dispute between the parties and may be briefly stated. In 1922 the late Guy P. Stubbs was the owner of a plot of ground 160 feet square, located in the northeast corner of Stubbs Avenue and North Third Street in the City of Monroe. On June 13, 1922, he conveyed to Solomon S. Goldman an inside lot: the easterly 60 feet fronting on Stubbs Avenue by a depth of 150 feet between parallel lines. He retained the remainder of the plot with a reduced frontage of 100 feet on Stubbs Avenue. Before the same notary and contemporaneously with the act of sale, Stubbs and Goldman entered into a contract in authentic form, which was recorded with the act of sale, and recites:

"Now therefore in accordance with appearer's representation to the said Solomon S. Goldman, which representation is hereby recognized as a part consideration for the purchase by said Solomon S. Goldman of the hereinabove described lot, appearer, Guy P. Stubbs, does hereby covenant and agree and does hereby bind himself, his assigns, heirs and executors as well as all future owners of the certain lot or portion of ground in the square hereinabove described which forms the corner of Stubbs Place (or Avenue) and Lot 'B' (or extension of Third Street) and measures One hundred feet (100 ft.) front on Stubbs Place or Avenue by a depth of One hundred and fifty (150

---

ties. However, it is clear from an application of judicial criteria that a justiciable controversy is presented. Tugwell v. Members of Board of Highways, 228 La. 662, 83 So.2d 893; State v. Board of Supervisors, 228 La. 951, 84 So.2d 597; Smith v. Smith, 230 La. 510, 89 So.2d 55; Superior Oil Co. v. Reily, 234 La. 621, 622, 100 So.2d 888. The record does not disclose the existence of another adequate remedy at law which would bar the use of declaratory judgment procedures under existing jurisprudence. Murphy v. Marino, La.App., 60 So.2d 128; Burton v. Lester, 227 La. 347, 79 So.2d 333; Smith v. Smith, supra; Prince v. Hopson, 230 La. 575, 89 So.2d 128; Theodos v. Bossier City, 232 La. 1059, 95 So.2d 825; Orleans Parish School Board v. City of New Orleans, 238 La. 748, 116 So.2d 509 (cf. LSA–C.C.P. Article 1871 effective January 1, 1961).

2. 120 So.2d 358.

ft.) feet between equal and parallel lines and which adjoins the property being conveyed this date to Solomon S. Goldman on the West, shall never be sold, transferred or used except subject to the following limitation and restriction to-wit:

"That said property shall only be used for residential purposes and that all dwellings erected * * * must be so erected so as to face Stubbs Place (or Avenue).

"It is understood that the foregoing restriction as to the use of the lastly described property shall constitute a covenant running with the land and shall be binding upon appearer and all subsequent owners thereof howsoever they may acquire."

In 1932 Stubbs sold to the Ouachita National Bank of Monroe the corner lot which he had retained. In 1945 the bank transferred the lot to B. I. McGuffy, the plaintiff. Neither of these transfers of title made reference to the restriction recited in the 1922 notarial act.

Plaintiff asserts that the restrictive covenant in the notarial act is a personal obligation effective only between the immediate parties and not a real obligation binding on him as a subsequent owner, for the reason that the restriction was not contained in his chain of title as required by Article 766 of the LSA–Civil Code. Plaintiff relies upon Holloway v. Ransome, 216 La. 317, 43 So.2d 673; Murphy v. Marino, La.App., 60 So.2d 128; Herzberg v. Harrison, La.App., 102 So.2d 554 and Begnaud v. Hill, La.App., 109 So.2d 562.

On the other hand, defendants contend that the restriction is a real obligation, bearing upon the property, created by title, namely the notarial act, and is valid and binding under the provisions of Articles 728, 743, 766, and 2015 of the LSA–Civil Code. Defendants rely upon Pizzolato v. Cataldo, 202 La. 675, 12 So.2d 677; Tucker v. Woodside, La.App., 53 So.2d 503 and Clark v. Reed, La.App., 122 So.2d 344.

Thus, only an issue of law is presented. Concisely stated, it is whether or not the recorded contract created a servitude or real obligation running with the land so as to affect a subsequent owner.

It is clear that an owner has the right to establish such servitudes on his land as he may deem proper, subject only to the rules prescribed by law. LSA–Civil Code Article 709.

■ The restrictive covenant, asserted herein, is a continuous, nonapparent servitude. LSA–Civil Code Articles 727, 728. Such a servitude can be established only by title. LSA–Civil Code Article 766; Goodwin v. Alexander, 105 La. 658, 30 So. 102; Ribet v. Howard, 109 La. 113, 33 So. 103; Bernos v. Canepa, 114 La. 517, 38 So. 438. Article 766 of the LSA–Civil Code provides:

"Continuous nonapparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title.

"Immemorial possession itself is not sufficient to acquire them.

"Immemorial possession is that of which no man living has seen the beginning, and the existence of which he has learned from his elders."

■ The plaintiff attempts to equate "title" as used in the article with the deed, or act of sale, by which the servient estate is acquired. He contends that, in order to create the servitude, the restriction must be incorporated in the deed conveying the land. Such a narrow construction, necessarily, does violence to the codal provision. An attenuated definition is warranted neither by the context in which the term is employed nor by the history of the article. This article is incorporated in the Section of the Code entitled "How Servitudes Are Acquired." The conclusion is inescapable that "title" as used in Article 766 refers to the method by which the servitude may be acquired and does not relate exclusively to the conveyance of the servient estate. It is a generic term which embraces any juridical act. Moreover, the servitude may be established by all acts by which immovable property can be transferred. LSA–Civil Code Article 743; Pizzolato v. Cataldo, supra: Tucker v. Woodside, supra; Stinson v. La-

para, La.App., 62 So.2d 291; Clark v. Reed, La.App., 122 So.2d 344, 349; 33 Tulane Law Review 822.

Separately recorded notarial instruments creating restrictive covenants have been recognized as valid on future assigns in the cases of Pizzolato v. Cataldo, supra, and Clark v. Reed, supra. LSA–Civil Code, Articles 2264, 2266. This is in accord with the provisions of Article 2015 of the LSA–Civil Code:

"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or *bona fide* purchaser."

The identical question, posed herein, was presented in the case of Clark v. Reed, supra; and in disposing of the issue the Court aptly stated:

"* * * under the provisions of LSA–C.C. Art. 2015, an owner may impose real obligations, whether in the nature of a servitude, a restriction, or other real obligation, upon his land while ownership is vested in him, or, as the article provides, ' * * * before the alienation of the soil, * * *.' Thus, the servitude need not be necessarily established by a deed or created in an act of sale. It suffices that the servitude was created and imposed in an act sufficient in form for the transfer of property. LSA–C.C. Art. 743. The instrument, in notarial form, was of such a character. Nor, under the provisions of LSA–C.C. Art. 2015, is the omission of any reference to the restrictions in the deed from the developer or subdivider, or in the deed to defendant, material, for, as therein provided, real obligations accompany the land in the hands of subsequent vendees without any mention thereof in the acts of transfer. The instrument, as recorded, therefore, constituted a link in, and an incumbrance on, defendant's title."

■■ The law favors the free and unrestrained use of immovable property. It follows that any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner. LSA–Civil Code, Article 753. The intention of the proprietor to establish a servitude must clearly appear from the title document. Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468; Clark v. Reed, supra. The contract, under consideration, explicitly declares that the restriction "shall constitute a covenant running with the land and shall be binding upon * * * all subsequent owners * * *." The recitals of the contract leave no doubt that a real obligation was created.

The cases of Murphy v. Marino, Herzberg v. Harrison, and Begnaud v. Hill, cited and relied upon by the plaintiff, are distinguishable. In the Murphy and Herzberg cases, the absence of uniformity and widespread acquiescence in the violation of the building restrictions by other owners created a waiver. In the Begnaud case, the restrictions did not apply to the offending property. There is no merit in the contention of the plaintiff, that the holding of the Court of Appeal herein is in conflict with the decision in Holloway v. Ransome, supra, for in that case, as in the Begnaud case, the restrictions did not affect the property of the litigant.

We conclude, therefore, as did the Court of Appeal, that the contract in authentic form executed by Guy P. Stubbs and Solomon S. Goldman on June 13, 1922, is a title within the intendment of LSA–Civil Code, Article 766 and created a servitude or real obligation running with the land which is binding on the plaintiff herein.

It has been pointed out that, whereas the notarial act described the property on which the restriction was established as having a depth of 150 feet, the Court of Appeal by its decree actually imposed the restriction on a lot of a depth of 160 feet. Upon examination of the record, we find this to be true; and, in this respect, the judgment of the Court of Appeal must be amended.

For the reasons assigned, the judgment of the Court of Appeal is amended so as to define the depth of the restricted property as "150 feet" instead of "160 feet, more or less, to an alley," and as thus amended the judgment is affirmed. All costs are to be paid by the plaintiff.

125 So.2d 159