GLADNEY, Judge.
Plaintiff acquired from certain co-owners of 160 acres of land in Lincoln Parish right-of-way grants to construct a pipeline. The pipeline had been laid and was being used by plaintiff when this partition suit was filed. As of the date of the commencement of these proceedings those grants from six-co-owners affected an undivided 44ths interest in said property. No privilege of easement was secured from the remaining 21 heirs and co-owners of a 94ths undivided interest of the property. Following certain preliminary proceedings all 27 co-owners of the estate of Lugene Younger, their common ancestor in title, appeared in Court to file two separate answers. Six of the defendants admitted execution of the grants *16 but asserted the invalidity thereof upon grounds of uncertainty and lesion beyond moiety. These respondents also, by way of reconvention, alternatively prayed for a decree fixing the value of each servitude at $5.00 per rod, averring that plaintiff might elect to retain title to the rights-of-way upon paying the equivalent. The remaining co-owners in their answer denied the existence of any title in plaintiff, asserting that the instruments above described affecting the %ths undivided interest in the property were patently invalid for uncertainty. Further answering, these defendants, by reconventional demand, urged the allowance of damages for the unlawful use of their property. In addition to the defense so made these latter defendants filed an exception of no cause of no right of action, contending that plaintiff was exercising the use of a right-of-way on their property for which it had no title whatsoever, and therefore it was not in a legal position to assert this action for partition.
The trial court maintained the exception of no cause and no right of action. Plaintiff obtained orders for a suspensive appeal from the Court’s ruling and thereupon the Court entered an order staying further action in all other proceedings pending the outcome of the appeal.
The peremptory exception of no cause of action was sustained by the trial court on the ground that plaintiff’s right-of-way grants did not sufficiently describe the servitude, its width, length and points of traverse. The trial judge found the same to be patently defective on their face, null, void, and of no effect as to these appellees so as to state a cause of action for a partition under LSA-C.C. Art. 740, and related articles.
The petition alleges appellant to be the owner of certain grants of right-of-way as per descriptive recorded data identifying the purported servitude with the dominant estate. Copies of the instruments of right-of-way are annexed as part of the petition. These confer upon the grantee “the right-of-way to lay, maintain and operate a pipeline over, under, across and through the following described property situated in Lincoln Parish, to-wit:
N iy2 SW y4; SE 14 of NW 14; and SW 14 NE 14 of Section 13, T-18N R-4W, Lincoln Parish,
together with all necessary rights of ingress to and egress from the above described premises * * * ” subject to certain terms and conditions thereafter stated which limit and restrict the exercise of such rights. Examination of the documents, however, discloses that there is no limitation within the descriptive limits of the servitude as to its width, course, length and points of traverse. It is not disputed, and in fact conceded, that plaintiff prior to the institution of this suit had constructed and operated the subject pipeline through the property of appellees.
The cause of action alleged, upon by plaintiff is predicated on certain provisions of the LSA-Civil Code including Articles 736 et seq. and more particularly Art. 740. The latter article expressly states that if the co-proprietor has established a servitude for his part of the estate only, the consent of the other owners is not necessary, but the exercise of the servitude must be suspended until his part be ascertained by a partition. Code Article 736 sanctions the establishment of servi-tudes by those who do not have full ownership but provides that such servitudes shall cease with the rights of their grantors. Articles 779 and 780 are concerned with the rights of the proprietor of the estate to which the servitude is due and stipulate:
“Art. 779. If the manner in which the servitude is to be used is uncertain, as if the place necessary for the exercise of the right of passage is not designated in the title, the owner of the estate which owes the servitude is bound to fix the place where he wishes it to be exercised.
*17 “Art. 780. If the title by which a passage is granted does not designate its breadth, nor the manner in which it is to be used, whether on foot, or horseback, or with carriages, the use which the person to whom the servitude is granted previously made of it will serve to interpret the title.
“If there was no such use made of it before, the probable intention of the parties must be considered, and the purpose for which the passage is granted.
“If these circumstances can afford no light, it must be decided in favor of the land which owes the servitude, and a foot passage must be conceded eight feet wide, where it is straight, and ten feet wide where it turns.” (Emphasis supplied.)
The statutory provisions as above set forth must be regarded as being more particularly or specifically related to the kind of title essential to the establishment of a conventional servitude and may not have the same application to a deed or instrument conveying fee title or full ownership. The title contemplated by Article 766 which declares that continuous non-apparent servi-tudes and discontinuous servitudes can be established only by a title, is appropriately characterized by Justice Sanders in McGuffy v. Weil, 1960, 240 La. 758, 125 So.2d 154:
“The plaintiff attempts to equate ‘title’ as used in the article with the deed, or act of sale, by which the servient estate is acquired. He contends that, in order to create the servitude, the restriction must be incorporated in the deed conveying the land. Such a narrow construction, necessarily, does violence to the codal provision. An attenuated definition is warranted neither by the context in which the term is employed nor by the history of the article. This article is incorporated in the Section of the Code entitled ‘How Servitudes Are Acquired.’ The conclusion is inescapable that ‘title’ as used in Article 766 refers to the method by which the servitude may be acquired and does not relate exclusively to the conveyance of the servient estate. It is a generic term which embraces any juridical act. Moreover, the servitude may be established by all acts by which immovable property can be transferred. LSA-CC Art. 743; Pizzolato v. Cataldo, supra; Tucker v. Woodside, supra; Stinson v. Lapara, La.App., 62 So.2d 291; Clark v. Reed, La.App., 122 So.2d 344, 349; 33 Tulane Law Review 822.” [125 So.2d 154, 157]
An authority which appears to be clearly analogous to the instant case and controlling as to our rule herein is Burgas v. Stoutz (1932) 174 La. 586, 141 So. 67. There the Court in resolving the question raised as to the nullity of a contractual provision incorporated in defendant’s deed of acquisition which gave unto the purchaser “the privilege of using the paved driveway in the rear of the above property, which driveway is part of Lot B belonging to the vendor herein.” The Court significantly stated:
“Defendant attacks the recorded stipulation as to the right of passage granted to plaintiff on the ground that it is insufficient, as it does not state the length or width of same.
“This particular ground of attack is without merit, since the paved runways are located as physical objects on the surface of lot ‘B,’ the property of defendant, as shown by photographs filed in evidence, and the length and width of same are easily ascertainable. That which can be made certain is considered in law as certain.” (Emphasis supplied)
******
“Since the creation of a real servitude is a form of alienation, defendant contends that the recorded stipulation as to the right of passage over lot ‘B,’ *18 owned by defendant, is too vague, uncertain, and indefinite in description to be a notice to a purchaser in good faith.”
* * * * * *
“As the driveway consists of paved runways, as shown by the runways themselves in place, as well as by the photographs filed at page S3 of the transcript, it is idle for defendant to .contend that the description of these runways as located ‘in the rear’ of lot ‘A’ is erroneous and misleading, since there is only one set of paved runways on lot ‘B/ and this driveway is particularly described in the stipulation creating the right of passage as being ‘a part of Lot’ B.”
“Manifestly, this was sufficient recorded notice to have placed defendant on inquiry, and to have enabled him to have ascertained the true facts of the case before purchasing lot ‘B.’ ” [141 So. 67, 68-69]
Supporting the holding of Burgas v. Stuotz are the following cases involving servitudes: Ronaldson v. Vicknair, La. App., 185 So. 52 (1st Cir. 1938); Dickson v. Arkansas Louisiana Gas Company, La. App., 193 So. 246 (2nd Cir. 1939); Wilson v. Scurlock Oil Company et al., La.App., 126 So.2d 429 (2nd Cir. 1961). Although Ronaldson v. Vicknair may be distinguished by reason of the fact that there was a descriptive plat annexed to the deed granting the right-of-way, the Court quoted with approval from Burgas v. Stoutz the reference and holding in that case which gave application to the legal maxim “that which can be made certain is considered in law as certain.” Regardless of the failure to describe the exact location of the servitude at the time of the grants this failure was remedied by the construction of the pipeline. It follows that that which was uncertain has been made certain.
The appellees in their brief in support of the ruling maintaining the exception of no cause of action rely upon Fawvor v. Crain, La.App. (1st Cir. 1942), 6 So.2d 227; Cuppies et al. v. Harris, 202 La. 336, 11 So.2d 609 (1942) ; Bologna Bros. v. Stephens, La.App., 23 So.2d 645 (2nd Cir. 1945) and Ronaldson v. Vicknair, supra. Of these Fawvor v. Crain and Ronaldson v. Vicknair involves servitudes. Fawvor v. Crain simply involved the determination of the right of plaintiff to institute a partition suit against a party who had acquired title of all co-owners but such grantee of the servitude was relegated to an action to have the servitude recognized on the whole strip of land, or to an action against the grantors for the return of the price for the right-of-way. This cited case, therefore, is inapposite. Ronaldson v. Vicknair is not inconsistent with the views herein taken. Cupples v. Harris and Bologna Bros. v. Stephens involve the construction of deeds to property rights- other than servitudes and therefore are inapposite.
It is our holding that appellant has established such a title as will entitle it to sustain an action for partition under the provisions of LSA-C.C. Art. 740 and related articles, and accordingly, the judgment maintaining the exception of no cause and no right of action is in error and will be reversed. The exception is overruled and this cause is remanded to the trial court for further proceeding not inconsistent with this ruling. Costs of this appeal are taxed against appellees, and all other costs shall be taxed after further proceedings.