347 So.2d 1180 (1977)
David P. LEVY et al.
v.
Louis B. GRAHAM et al.
No. 11376.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Maurice J. LeGardeur, Jr., Covington, and John B. Wilkinson, New Orleans, for plaintiffs, appellants.
J. B. Kiefer, New Orleans, for defendants, Louis B. Graham, John A. Cole and Mrs. Adelia Hey, appellees.
Ralph R. Miller, Norco, for intervenor, Joseph D. Vinson, appellee.
Before ELLIS, CHIASSON and PONDER, JJ.
*1181 ELLIS, Judge:
On October 8, 1968, Louis B. Graham sold Lots 27 and 29 of Oaklawn Subdivision in St. Tammany Parish, together with a 40 foot strip adjacent to Lot 27, to Mrs. Rose Marie Frazier, wife of, and Henry Toomer Morrison. The deed contained the following provision:
"IT IS AGREED AND UNDERSTOOD by and between the parties hereto that the following restrictive covenants are imposed as serious consideration for the sale and transfer, and that this sale and transfer would not have been made without the following restrictions, to wit;
"The said property conveyed herein shall be used for residential purposes only, and no business, business enterprise nor any noxious or offensive establishments may be built or carried on on said property.
"IT IS FURTHER AGREED AND UNDERSTOOD that the above restrictions may be altered by the unanimous consent of the owners of the aforedescribed lots 27 and 29, as well as by the unanimous consent of the owners of Lots 31, 33 and 35."
This suit was subsequently filed by Messrs. Levy, Banjavich, Robin and Wilkinson, together with Balehi Marine, Inc., against Mr. Graham, John A. Cole and Mrs. Adelia Hey, the owners of Lots 31, 33 and 35, seeking a declaratory judgment that Lots 27 and 29, and the adjacent 40 foot strip, be declared free of the restriction contained in the October 8, 1968, deed from Mr. Graham to Mr. and Mrs. Morrison. After an exception of no cause of action was overruled by the trial court, answer was filed on behalf of all defendants, asking that plaintiffs' petition be dismissed.
Thereafter, a motion for summary judgment was filed by plaintiffs, based on the "pleadings and admissions on file", and alleging that plaintiffs are entitled to judgment as a matter of law. No supportive affidavits were filed.
A "Motion for Partial Summary Judgment" was then filed by Louis B. Graham, alleging that the only matter at issue was the interpretation of the restrictions contained in the deed to Mr. and Mrs. Morrison; that there was no issue of material fact; and that he was entitled to judgment declaring the validity of the said restrictions as a matter of law.
A petition of intervention was filed by Joseph D. Vinson, alleging that he had purchased the property of Mrs. Adelia Hey, and that he desired to be made a party defendant.
After a hearing on the motions, two judgments were rendered: one denying plaintiffs' motion for summary judgment; and the second granting judgment in favor of Mr. Graham and Mr. Vinson recognizing the validity and binding effect of the said restrictions. Plaintiffs have appealed from both judgments.
Plaintiffs' viewpoint in this court is that, since the restriction is not couched in terms which specifically state that it is to be binding on the successors in title of the Morrisons, it must be construed as personal in nature as to the Morrisons and not binding on their heirs and assigns.
Restrictive covenants are generally characterized as continuous, non-apparent servitudes, which can only be established by title. Articles 727, 728, 766, Civil Code; McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960). In order to have effect on the successors in title of the immediate parties to the act containing the restriction, the obligations imposed thereby must be on or in favor of an estate, rather than a person. Article 709, Civil Code. No particular form is necessary for the creation of such a servitude, but the intention to create the servitude must clearly appear from the title by which it is established.
Article 753 of the Civil Code states:
"Servitudes which tend to affect the free use of property, in case of doubt as to their extent or the manner of using them, are always interpreted in favor of the owner of the property to be affected."
In McGuffy v. Weil, supra, the court said:
"The law favors the free and unrestrained use of immovable property. It *1182 follows that any doubt as to the interpretation of a servitude encumbering property must be resolved in favor of the property owner. LSA-Civil Code, Article 753. The intention of the proprietor to establish a servitude must clearly appear from the title document."
After reviewing the language of the restrictive clause at issue, in the light of the foregoing principles of law, we are of the opinion that the court below correctly resolved the case. Although the words "never" and "forever" do not appear in the clause, we think the entire tenor thereof reflects that it was intended to create more than a personal obligation on the part of the Morrisons. We also note that the restrictive language appears in the deed immediately after the description, and immediately before the habendum clause, which reads:
"To have and to hold the above described property unto the said purchasers, their heirs and assigns forever."
We think this indicates an intent on the part of the parties that the property is transferred subject to a limitation intended to bind all subsequent owners of the property.
We think further that the fact that the restriction can only be modified with the consent of the owners of Lots 31, 33 and 35, indicates that the obligation created by the restrictive clause is in favor of those estates. The provisions of Article 754 of the Civil Code would appear to foreclose any characterization of the restrictive clause except as a servitude.
Finally, under Article 2012 of the Civil Code, a servitude is a real obligation. Article 2015 provides as follows:
"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he have made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or bona fide purchaser."
Since Mr. and Mrs. Morrison acquired the property subject to the restriction, they could not transfer to the plaintiffs herein any more than they received. Any attempt on their part to release or alter the restriction can be of no effect.
Plaintiffs also contend that the fact that the restrictions may be "altered by the unanimous consent of the owners of the aforesaid Lots 27 and 29, as well as the unanimous consent of the owners of Lots 31, 33 and 35," makes the obligation personal rather than real. They rely on the case of Le Blanc v. Palmisano, 43 So.2d 263 (La.App.Orl.1949), in which the following restriction was at issue:
"No commercial property shall be permitted to be constructed or occupied as such on this property except by written consent of the Claiborne Avenue Extension Realty Company, Inc."
The court properly found that language to create a personal obligation, since the restriction could be altered by the Realty Company at any time without the consent of any of the other property owners in the subdivision and therefore did not inure to their benefit. In this case, we have found that the restrictions imposed are in favor of Lots 31, 33 and 35, and are real rather than personal in nature.
The judgment appealed from is therefore affirmed at plaintiffs' cost.
AFFIRMED.