378 So.2d 959 (1979)
Patrick F. RICHARD, Plaintiff-Appellant,
v.
Robert Joseph BROUSSARD, Jr., Defendant-Appellee.
No. 7133.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1979.
Rehearing Denied November 21, 1979.
*960 J. Barry Mouton, Lafayette, for plaintiff-appellant.
J. Lee Wimberly, Jr., Church Point, for defendant-appellee.
Before SWIFT, STOKER and DOUCET, JJ.
STOKER, Judge.
This is an action for declaratory judgment. Plaintiff, Patrick F. Richard, seeks a decree declaring that certain property purchased from John Elmer Jagneaux is free from any restrictive covenants. The restrictive covenant in question was purportedly placed upon the land in 1968 by insertion in a deed by plaintiff's ancestor in title, Robert Joseph Broussard, Jr., who sold to Jagneaux. Robert Joseph Broussard, Jr. is the sole defendant in this case.[1]
The issue presented by this appeal is whether the trial judge erred in his determination that there was a valid building restriction in effect on plaintiff's property which prohibited the use of that land for commercial purposes. The issue to be resolved presented the following questions:
(1) Whether there was ever a valid restrictive covenant imposed upon plaintiff's land in accordance with a "general plan governing building standards, specified uses and improvements," I. e., in the sense provided by LSA-C.C. art. 775?
(2) If there was ever such a restrictive covenant affecting plaintiff's lot, has it been abandoned by general usage of other *961 residential lots in the area for commercial purposes?
(3) If no restrictive covenant was ever imposed upon plaintiff's lot of the nature referred to in paragraph (1) above, is plaintiff under an obligation to defendant not to use the lots for other than residential purposes grounded upon some other legal basis, particularly rights and obligations in the nature of a predial servitude?
As we understand the trial court's reasons for judgment it did not decide question (1) above, but it evidently did find obligations of the nature referred to in question (3) above. The trial court found "that there exists on said property a building restriction, restricting it to residential use only, the same being valid and enforceable against plaintiff."

FACTS
The defendant was the owner of a large tract of property located in the town of Church Point, Louisiana. The facts in this case are somewhat limited. However, the parties entered into a stipulation of facts. Admitted through the stipulation is a sketch of a long, rectangular piece of property located between four streets which allegedly contains properties which defendant began to subdivide in 1954. This sketch was introduced and appears in the record as exhibit "A". For the sake of clarity we have inserted below a sketch abstracting the pertinent information shown on exhibit "A". As will be seen, an alley runs the length of, and parallel to, two of the streets for approximately three-quarters of the length of the block. A series of lots of varying widths front on the streets shown as David Street and the unmarked street which we take to be Main Street. Most of these lots appear to be approximately 200 feet in depth between parallel lines running from either David or Main Street back to the alley. The alley ceases to run through the block when it reaches the unsold land retained by Broussard.
No overall or general plan of subdivision restrictions was imposed on the entire subdivision, if such it can be called. Restrictive covenants were inserted in the instruments conveying lots to individual purchasers of certain lots; however, this was not done in all cases.

[See following illustration.]
*962 
*963 Under the stipulation, it appears to be agreed that a prohibition against any use other than residential was included in all sales subsequent to 1954.
The deed transferring title from the defendant to John Elmer Jagneaux contained the following language:
"It is understood and agreed by and between the parties to this sale that the... property shall be and remain residential property; that this stipulation shall be valid and binding upon the executors, administrators, heirs, successors and [word indistinct] of purchaser, and shall be enforced by the proper legal action."
The description in the deed from Broussard to Jagneaux reads as follows:
A certain lot or parcel of land together with all buildings and improvements thereon and thereon belonging, if any, situated in the town of Church Point, Acadia Parish, Louisiana, having a width of 125.2 feet fronting on South Main Street, and measuring 188.7 feet on its Southern boundary, and running along a 55 foot street right-of-way not yet opened, and measuring 126.2 feet on its rear and/or Eastern boundary and measuring 188.5 feet on its Northern boundary, bounded now or formerly on the North by Wade Leger; on the East by South Main Street; on the South by 55 foot unopened street right-of-way; and on the West by Mrs. Robert Broussard, et al., as per plat of survey made for John Elmer Jagneaux by W. H. Jarrell, Jr., dated July 2, 1968, which is attached hereto and made a part hereof.
The plat made by W. H. Jarrell, Jr. referred to above is not attached to the copy of the deed in evidence. However, we take the language to mean that the survey was of the property conveyed rather than a subdivision of the whole.
On December 28, 1972, plaintiff purchased this same tract of land from Mr. Jagneaux, which was then described within the deed as follows:
"A certain piece, parcel or lot of ground situated in the Corporation of the Town of Church Point, Acadia Parish, Louisiana, on the S/W side of Main Street and measuring 125.2' fronting on Main Street; 188.5' on the N/W Boundary Line: 126.2' on the S/W Boundary Line and 188.7' on the S/E Boundary Line, and is bounded now or formally N/E by Main Street; N/W by Wade Leger; S/W by Alley or property of Shirley Bergeron and S/E by Robert Street."
The stipulation of fact between the parties opens with the following recitation:
We have prepared a map which we will introduceWe don't know if it is a survey[,] but it is a scale drawing of the block of land in question[,] and it has been colored in various colors and markings.
After that prefatory statement the parties indicate the character of each parcel of land within the block.
According to the stipulation, the property lying in the southeastern corner of Broussard and David Street, consisting of two lots of 50 and 82 foot frontages on Broussard, and marked through with a "X," were sold by parties other than defendant and his ancestors. The second classification of sales consists of property marked in yellow on the official exhibit and indicated by diagonal lines on our exhibit. These tracts constitute some five parcels of property, two fronting on David Street and three fronting on Main Street, which were sold prior to 1954 with no restrictions on them whatsoever.
A third classification of property within the block consists of property near the northern end of the block fronting both on David Street and Main Street which has never been alienated by the Broussard family. This property has no restrictive covenants on it.
All other individual plots of ground shown on the sketch were sold subsequent to 1954 and each of the acts conveying them contain a restriction to residential use similar to that quoted above which appears in the act of sale transferring title from the defendant to Jagneaux.
*964 The trial evidence indicates that a plot belonging to Joseph Oscar Beaugh fronting approximately 200 feet on Main Street near the southern portion of the property has a tennis court located on it belonging to Mr. Beaugh. Plaintiff contends that Mr. Beaugh rented the use of this tennis court, that this was a commercial venture, and therefore, if viable restrictions ever existed against commercial use of the property in the block, these restrictive covenants have been abandoned.
Trial Court's Reasons For Judgment.
The trial court gave very brief reasons for judgment. They are reproduced here as follows:
This matter comes before the Court on plaintiff's petition for declaratory judgment, his requested relief being a decree that property owned by him is free of any restrictive covenants.
Without deciding the issue as to whether the original vendor, defendant in this suit, has proved a general plan or scheme upon which a building restriction should stand, this Court finds the building restriction found in the sale of this property to John E. Jagneaux, plaintiff's immediate predecessor in title, to have created a building restriction running with the land into the hands of successive buyers. See Comments of La. Revised Civil Code Article 775 to 783, as amended Acts 1977, and cases cited therein.
For the above reasons, the Court denies plaintiff's requested relief. Accordingly, this Court finds that there exists on said property a building restriction, restricting it to residential use only, the same being valid and enforceable against plaintiff. Costs of these proceedings to be paid by plaintiff.

NATURE OF THE ACTION
The plaintiff's petition, the evidence presented by the parties and the arguments made in this appeal, as reflected in the briefs, establish that both parties conceived of their rights being governed by Articles 775 through 783 of the Louisiana Civil Code. Plaintiff specifically states this and quotes each of the articles beginning on page one of his brief. Under these articles, therefore, the parties refer to restrictive covenants which are designated as building restrictions, LSA-C.C. art. 775, under Louisiana law. Some previous Louisiana jurisprudence refers to such restriction by the common law term of covenants running with the land. Exposeé des Motifs appearing in Book II, Title V, Building Restrictions preceding the text and comments, under Articles 775 through 783 as enacted by Act 170 of the 1977 Regular Session of the Legislature. The Exposeé des Motifs just mentioned and the official comments under the new articles suggest that such rights should be classified as sui generis real rights akin to predial servitudes.[2]
The trial court made no determination as to the existence of sui generis real rights (that is an Article 775 type building restriction). This is so because, as its reasons for judgment state, the finding of the trial court was made "without deciding the issue as to whether the original vendor, defendant in this suit has proved a general plan or scheme upon which a building restriction should stand." However, the existence of such a plan or scheme is a specific requirement of Civil Code article 775. It is clear, therefore, that the trial court based its finding on some other legal theory. Inasmuch as the trial court gave as its authority the Comments under Articles 775-783 "and the cases cited therein," we assume that it actually held that the "restriction" was in the nature of a predial servitude. With this we can agree.
As the Comments under the articles in question and other authorities make clear, building restrictions of the sui generis real rights type and "restrictions" which may be of the predial servitude type are not the same. The rights and obligations flowing from each are different. Moreover, if a *965 predial servitude rather than an Article 775 building restriction is involved, the restriction is enforceable by the vendor only and not by owners of other titles which may contain the same type of restriction. Lamana-Panno-Fallo, Inc. v. Heebe, 352 So.2d 1303 (La.App. 4th Cir. 1977); In Re Congregation of St. Rita Roman Catholic Church, 130 So.2d 425 (La.App. 4th Cir. 1961) and Murphy v. Marino, 60 So.2d 128 (La.App. 1st Cir. 1952).
In this declaratory action defendant Broussard, the seller, defends on the ground that since 1954 he has sold lots according to a general plan. In his brief his position and alternative position are set forth as follows:
In this case, all lots sold by defendant since 1954 have contained a residential restriction. Defendant contends that the pattern developed does in fact evidence a general plan of development devised to maintain certain building standards, and therefore, the restriction contained in plaintiff's title is a covenant running with the land, enforceable by defendant and the owners of other lots in the subdivision similarly restricted. If the Court should find, however, that this is not a covenant running with the land, then the restriction is enforceable only [by] the creator, the defendant herein. The jurisprudence is clear that defendant has the right to enforce the restriction in either instance.
Plaintiff appears to agree with defendant to the extent of conceiving of the issue as whether lots were sold according to a general plan. Plaintiff contends there was none. Alternatively, plaintiff contends that if there was a plan, the restriction against commercial use has been abandoned. It appears to us that the parties are entitled to have these issues adjudicated.
The Law of Building Restrictions under LSA-C.C. art. 775.
The law of building and use restrictions relating to immovable property, the nature of such restrictions, the obligations and limitations which are imposed, and the means by which and by whom they may be enforced was most recently reviewed by this court in an exhaustive opinion written by Judge Guidry in Gwatney v. Miller, 371 So.2d 1355 (La.App. 3rd Cir. 1979).
The lead and opening article of the Civil Code on building restrictions as enacted in 1977 reads as follows:
Article 775. Building restrictions
Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved.
The official Comments under Article 775 read as follows:
Comments
(a) This provision is new. It codifies Louisiana jurisprudence. It does not change the law.
(b) The law of building restrictions is a creature of Louisiana jurisprudence. See Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641 (1915). In this revision, building restrictions may merely involve restraints on the use of immovables. Restraints on alienation, to the extent that they may be valid under Louisiana law, are not effected by this revision.
(c) The creation of building restrictions as sui generis real rights is subject to the requirement that there be a general plan that is feasible and capable of being preserved. See Gerde v. Simonson Investments, Inc., 251 La. 893, 207 So.2d 360 (1968); Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (1947); Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 La.L.Rev. 44, 59-75 (1969). In the absence of a general plan, however, the building restrictions may constitute veritable predial servitudes. See McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960). When restrictions are imposed by stipulations inserted in individual acts of sale, care should be taken to impose uniform restrictions on most, if not all, individual lots in the subdivision. Omission to make the restrictions uniform or to insert them in a substantial number of sales may be taken to indicate *966 absence of a general development plan. In these circumstances, the stipulations establishing the restrictions may create personal obligations rather than sui generis real rights.
(d) Building restrictions constitute the most important category of restraints on the use or disposition of immovables from the viewpoints of urban and suburban developments in Louisiana. They have been defined as limitations "inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards and uniform improvements. Salerno v. DeLucca, 211 La. 659, 30 So.2d 678, 679-680 (1947). The requirements of an ancestor in title and of a general development plan are essential features of building restrictions as sui generis real rights. Unlike predial servitudes under the Civil Code, building restrictions may involve certain affirmative duties and may exclude the performance of certain juridical acts; moreover, building restrictions may be imposed even in the absence of a dominant estate.
(e) According to firmly established Louisiana jurisprudence, building restrictions constitute real rights only in the framework of subdivision planning. They must be imposed at, least by implication, in favor of lots in a subdivision in accordance with a general development plan. If the restrictions are imposed on individual lots without regard to a general development plan, they may constitute veritable predial servitudes, provided, of course, that the requirements for the creation of predial servitudes are met. See McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960) (restriction of commercial usage imposed on a single lot in favor of another lot). If the requirements for the creation of predial servitudes are not met, the restrictions may only be personal obligations. See Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964); Cambais v. Douglas, 167 La. 791, 120 So. 369 (1929); LeBlanc v. Palmisano, 43 So.2d 263 (La. App.Orl. Cir. 1949). But see Tucker v. Woodside, 53 So.2d 503 (La.App. 1st Cir., 1951), criticized in Yiannopoulos, Civil Law Property § 114 (1966). This isolated decision, deviating from well-established principles of property law, should be regarded as confined to its own facts.
The official comments under Articles 776 and 777 reiterate and supplement the comments set forth above.
The principles reviewed in these Comments represent the settled law of this State. Therefore, we regard the preliminary question to be: Was there a general plan of development for subdivision of defendant's property?
Has the Property Been Developed According to General Subdivision Plans?
As was previously noted above, the evidence in this case is not extensive. Although we are reluctant to make assumptions, from the meager evidence in the record there is every indication that the Broussard property has not been subdivided according to any general plan. The course followed by defendant and his parents appears to be desultory and unplanned. The course followed appears to be quite contrary to the situation where a subdivision is formally planned, subdivided into lots from the beginning, platted by a surveyor, staked off into lots and offered for sale as such. On the contrary, the description of the property in the deeds to Jagneaux and the plaintiff would indicate that the property as a whole was never surveyed into lots at one time, but that the defendant and his parents simply sold property as the occasion arose. This gives rise to lots of varying widths. Moreover, at the northern end of the property there is no evident scheme or plan at all with reference to the large block of property still held by defendant, or by him or other members of his family.
This is not to say, or to hold, that it is necessary to impose restrictive covenants on a subdivision as a whole prior to the selling of the individual lots. It is quite possible to create valid subdivision restrictive covenants by simply inserting them into individual acts of sale. This was observed in Gwatney v. Miller, as follows:

*967 The fact alone that restrictive covenants are inserted into individual acts of sale does not establish that they were not intended to pursue a general plan of development for the subdivision. Rather the uniformity or consistency of the restrictions must be examined in order to determine the original intentions of the subdivider. See Yiannopoulos, Real Rights: Limits of Contractual and Testamentary Freedom, 30 La.Law Rev. 44 (1969) at p. 64.
The observations on this point of Professor Yiannopoulos referred to in the Gwatney case read as follows:
In the past, building restrictions were inserted by developers of land in each individual act of transfer of property in a subdivision. Today, however, building restrictions are ordinarily contained in recorded notarial acts or are annexed to recorded plats of subdivision. Individual transfers of property then incorporate by reference the recorded acts or plats.
The creation of building restrictions as sui generis real rights is subject to the requirement that there be a general plan that is feasible and capable of being preserved. Thus, when restrictions are imposed by stipulations inserted in individual acts of sale, care should be taken to impose uniform restrictions on most, if not all, individual lots in the subdivision. Omission to make the restrictions uniform or to insert them in a substantial number of sales may be taken to indicate failure of a general development plan. In these circumstances, the stipulations establishing the restrictions may create personal obligations rather than sui generis real rights.
In the case of In re Congregation of St. Rita Roman Catholic Church, 130 So.2d 425 (La.App. 4th Cir. 1961) the Court said:
Building restrictions, such as those in question, are valid and enforceable where inserted in deeds in pursuance of a general plan devised by the ancestor in title to maintain certain building standards; such restrictions inure to the benefit of all other grantees under a general plan of development, and are real rights running with the land, which the grantees or their successors in title may enforce by injunction. (Citations omitted.)
However, where restrictive covenants do not appear in chains of title of half the lots of a subdivision, for which no general plan of subdivision or restrictions had been recorded, as obtains here, such restrictions will not be enforced as covenants running with the land against any of the grantees of original subdivider or their successors. (Citations omitted.)...
Where the restriction is not a covenant running with the land, it is personal to the creator of the restriction, ... (Citation omitted.)
With respect to the property involved in this declaratory action before us, an examination of the exhibit depicting the layout of the lots and the characterization of the various portions, it is not possible to discern any general plan of development. It is simply a strip of property lying between two streets permitting the selling off of lots at random fronting on the two streets. The Broussard interests have apparently provided for an alley which leads from the southern most street, shown as Hospital Street, through the middle of the strip to that block of property still held by the Broussards. This irregular block of property (indicated as shaded in dots) is completely unburdened by the kind of restrictive covenants which have been inserted in conveyances of the properties since 1954. In fact, it is entirely unrestricted. While it may be granted that there appears to be some system of including the restrictive covenants in all sales since that date, the lots which were sold prior to 1954 although only five in number, include one lot which appears to be approximately 100 feet in width fronting on David Street. Another appears to have a frontage of 290 feet on Main Street. Therefore, insofar as total square footage is concerned, a considerable block of property which is unrestricted separates that group of restricted lots lying to the south of it from those lying to the north of it. The *968 same may be said of the property retained by the Broussards, as it separates a number of restricted lots restrictions lying to its south from restricted lots to the north of it.
In addition to the random width in frontage of the properties which have been sold, there appear to be properties which may have been retained as side streets which do not bear any relationship to any orderly subdivision plan.
In view of all of the foregoing, we are unable to find that plaintiff's property is a "subdivision" which has been developed in accordance with a general plan governing building standards, specified uses, and improvements. It may well be that additional evidence might have disclosed such a plan. However, such evidence is not in the record.
Is the Restriction to Residential Use Inserted in the Act of Sale from Broussard to Jagneaux a Predial Servitude Enforceable by Broussard Against Subsequent Owners?
Above we quoted from defendant Broussard's brief setting forth his alternative argument. This alternative argument is as follows:
If the Court should find, however, that this lot is not a covenant running with the land, then the restriction is enforceable only [by] the creator, the defendant herein. The jurisprudence is clear that defendant has the right to enforce the restrictions in either instance.
We hold that defendant is correct in this alternative argument. McGuffey v. Weil, 240 La. 758, 125 So.2d 154 (1960); Clark v. Reid, 122 So.2d 344 (La.App. 2nd Cir. 1960); and Yiannopoulos, Civil Law of Property, Volume 1 of Louisiana Practice, Section 104, page 310.
The restriction in question was established by title. It was inserted as an agreement in the act of sale between defendant as seller and the first purchaser, Jagneaux. It was stated "that this stipulation shall be valid and binding upon," among others, "successors of purchaser, and shall be enforced by proper legal action."
Two estates are involved, and it is clear that the restriction is in favor of the property of Broussard from which Jagneaux's lot is taken. New Article 731 of the Civil Code provides that a "charge established on an estate expressly for the benefit of another estate is a predial servitude although it is not so designated." Act 514 of the 1977 Regular Session of the Legislature. The Comment under the article states that it reproduces the substance of Article 754 of the Louisiana Civil Code of 1870 and does not change the law. Old Article 754 reads as follows:
Art. 754. Servitudes being established on estates in favor of other estates, and not in favor of persons, if the grant of the right declare it to be for the benefit of another estate, there can be no doubt as to the nature of this right, even though it should not be called a servitude.
See also New Article 733 of the Civil Code.
Art. 733

PREDIAL SERVITUDES
Art. 733. When the right granted be of a nature to confer an advantage on an estate, it is presumed to be a predial servitude.
New Article 650 states in its second paragraph that the "predial servitude continues as a charge on the servient estate when ownership changes." This article reproduces Old Article 563 and 654 which are to the same effect.
The case of McGuffy v. Weill, supra, is solid authority for our holding here. The facts of that case are parallel to those of this case except that only one lot had been sold from the parent estate or lot. The discussion of theory in that case is fully sufficient to establish that plaintiff's property in the case before us is burdened with a predial servitude which defendant may enforce. The narrow holding (in the reasons for judgment) of the trial court was that the language in the sale from defendant to Jagneaux "created a building restriction running with the land into the hands of successive buyers," and further that "there *969 exists on said property a building restriction, restricting it to residential use only, the same being valid and enforceable against plaintiff." The judgment, very brief in form, denied plaintiff the declaratory relief of freeing his property from the residential restriction use and decreed "that the building restriction contained in plaintiff's title is valid and enforceable against plaintiff". (Emphasis supplied) We affirm this judgment.
This litigation is between plaintiff and defendant only. The former is owner of the servient estate and the latter of the dominant estate. Our affirmance of the trial court's judgment affects the parties to this suit only. We make no adjudication as to the rights of holders of other lots purchased from defendant and make no comment thereon.
For the foregoing reasons we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff-appellant.
NOTES
[1] The trial court overruled an exception of nonjoinder of necessary parties filed by defendant on the ground that all owners of property in the block where plaintiff's lot was located should be joined in the action.
[2] Neither the Exposeé des Motifs nor the Comments which appear under the Civil Code articles adopted in 1977 relative to predial servitude or building restrictions are law. See the footnotes on the beginning page of the Exposeé des Motifs for each subject.