388 So.2d 826 (1980)
BOSSIER CENTER, INC., Plaintiff-Appellee,
v.
B & B SYSTEMS, INC., Dewitt H. Patten, Intervenor, Defendants-Appellants.
No. 14234.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1980.
*827 Glenn Armstrong, Bossier City, for plaintiff-appellee.
Michael G. Latimer, Bossier City, for defendant-appellant.
Before PRICE, HALL and JASPER E. JONES, JJ.
JASPER E. JONES, Judge.
Defendant, B & B Systems, Inc. (B & B), and intervenor, Dewitt H. Patten (Patten), appeal a judgment enjoining B & B from constructing a sign upon the property leased by it from Patten and rejecting the demands of B & B and Patten for damages which they allegedly sustained by virtue of the issuance of the TRO and permanent injunction prohibiting the erection of the sign. There was never a preliminary injunction granted, but there was a stipulation at an initial hearing in these proceedings between all the parties that the TRO granted when suit was filed would continue in effect until the proceedings were complete. The judgment also dismissed the intervention filed by Patten wherein he sought in addition to damages a judgment declaring that there were no restrictions upon the use of his property which he had purchased from Bossier Center, Inc.
Plaintiff sold Patten a strip of land 20 ft. wide by 176.7 ft. long in Bossier City, Louisiana on August 30, 1978. The deed contained the following provision, to-wit:
"Vendee agrees not to erect any structures without the written consent of the vendor."
Patten leased a sign location on the west end of the tract to B & B on September 8, 1978. B & B commenced construction of the sign without having obtained approval of Bossier Center. Bossier Center instituted this action against B & B to enjoin the construction of the sign. Patten intervened in the proceeding and along with B & B Systems denied that the property was subject to the restriction upon which plaintiff claimed the right to the injunction and sought damages for the alleged illegal prohibition of the erection of the sign.
Following the trial on the permanent injunction the trial court rendered a judgment enjoining B & B from placing a sign upon the property and rejecting the demands of Patten and B & B. B & B and Patten appeal. We amend the judgment to order that the use limitation constitutes neither a predial servitude nor any other form of covenant running with the land and as amended affirm.
On April 4, 1978 Bossier Center granted Patten an option to purchase a tract of land 176.7 ft. × 268 ft. containing 1.726 acres and located 157 ft. south of the Old Minden Road and approximately 13 ft. east of the I-20 right-of-way in Bossier City. Following acquisition of the option Patten had a plat prepared for the purpose of seeking a rezoning of the property. The plat reflected approximately 18 small lots on which apparently small offices or commercial structures could be placed and it also showed appropriate parking areas, streets and sidewalks. At the time the 45 day option expired the rezoning application had *828 been rejected. Bossier Center's officers denied they were aware that it had been rejected. Patten apparently desired to continue with his efforts to develop the tract and sought another option upon it for the same $10.00 consideration he paid for the first one. Bossier Center sought a $2,500.00 consideration for the second option and it was in connection with the negotiation for the second option that Patten acquired the north 20 ft. of the property for a consideration of $5,000.00. The property was described as follows:
"The North twenty (20) feet of vendor's property immediately adjoining Long John Silver Restaurant, in Section 28, Township 18 North, Range 13 West, Bossier Parish, Louisiana, as outlined in red on attached drawing."
A copy of the plat is here included to facilitate an understanding of the facts. (See p. 829). The deed included an option for an additional 45 days on the remainder of the tract with the original option price being reduced by $5,000.00 which was the consideration for that portion of the property included in the deed which had been covered by the initial option. There was no consideration recited for the second option.
*829 
*830 The drawing referred to in the description was the detailed map which Patten had prepared for the purpose of submitting the zoning application. Patten testified when he was first submitted the deed prepared by Thomas Wilson, president of Bossier Center, Inc., he refused to sign it because it reserved to the vendor a 40 ft. wide right-of-crossing over the conveyed property and because of the language "Vendee agrees not to erect any structure without the written consent of vendor". The following language was then added to the deed "Crossing as shown on attached sketch satisfies the 40 ft. minimum requirement. Also development plan is acceptable."
The development plan referred to in the deed was the map prepared for the re-zoning application which reflects 18 lots that were apparently designed for use as building sites. One of these lots shown on the development plan as Lot 19 is 20 ft. wide and 50 ft. long and is located on the west end of the property bought by Patten from Bossier Center and is the lot leased to B & B on which it had commenced the construction of the sign. Patten contends that the added stipulation in the deed to the effect that the development plan is acceptable had the effect of eliminating the clause requiring Bossier Center to consent to the erection of the structure on Lot 19 because Lot 19 was shown on the plat as a place on the property purchased on which structures could be built.
The trial judge in his reasons for judgment found the language of the deed clear and unambiguous and that it required written consent of the vendor for erection of any structure. The trial judge evaluated the evidence concerning the negotiation for this small tract of land as follows:
"Mr. Patten previously had an option on not only the tract purchased but the tract as shown on the attachment to the deed. He paid $10.00 for this option and when it expired he requested another option for the same consideration. Plaintiff refused but offered him one for $2,500.00. Mr. Patten then made an offer to purchase the same portion of the property and received an option extension on the balance. The consideration for this being $5,000.00. An overview of the evidence would indicate that Mr. Patten wanted something for his money and received a small strip of land together with the option on the remainder and that plaintiff, the owner of the property in the rear of the small strip conveyed, desired to have access to such property and approval of any structure thereon as it is evident that they desired for the whole tract to be developed."
Appellants assign as error (1) the trial court's interpretation of the deed requiring Bossier Center, Inc. to approve any structure erected upon the property conveyed, (2) appellants contend that if the deed in fact required Bossier Center's consent to the erection of any structure on the property conveyed that the restriction is invalid because it is against public policy and contrary to Articles 11[1] and 12[2] of the Civil Code; intervenor seeks an adjudication that his property is not subject to the restriction, (3) appellants alternatively contend that if the restriction is valid that Bossier Center unreasonably withheld its consent to the erection of the sign, and (4) finally appellants contend the trial court erred in rejecting their demand for damages.

WAS THE TRIAL JUDGE'S INTERPRETATION OF THE DEED CORRECT?
The development plan attached to the deed clearly reflects the property which Patten purchased as being a narrow strip 20 ft. in width across the entire north end of Bossier Center's property which it hoped to *831 develop in the event Patten did not exercise the second option which Patten was given in the deed.
It becomes apparent from viewing the plat why Bossier Center considered it essential that it have the right to approve structures placed on the narrow strip by Patten because those structures could obstruct the view to the remainder of the property and otherwise depreciate its value. The language contained in the deed to the effect that the development plan was approved indicated only that Bossier Center agreed generally with the location, size and layout of the lots on which offices or small commercial buildings would be placed if and when the plan was approved by the Metropolitan Planning Commission of Bossier City. This language did not detract from or modify the unambiguous language contained in the clause wherein Patten agreed not to erect any structure without the written consent of the vendor.
We conclude that the trial judge's interpretation of the deed was correct and that the parties to the instrument intended for the vendor to approve any kind of structure before the vendee placed it upon the property.

WAS THE USE RESTRICTION CONTRARY TO PUBLIC POLICY?
This contention was made in the decision of Ouachita Home Site & Realty Co. v. Collie, 189 La. 521, 179 So. 841 (1938) in an attempt to invalidate a subdivision restriction prohibiting the use of the property for commercial purposes. The court there rejected the contention that the use restriction was comparable to restrictions against inalienability which were held invalid in the decision of Female Orphan Society v. Yound Men's Christian Ass'n., 119 La. 278, 44 So. 15 (1907). The court stated at 179 So.2d p. 842:
"While a condition of perpetual inalienability of real estate under our law is void as putting property out of commerce and contrary to public policy, there is nothing in our law which forbids contracts for the use or nonuse of real estate, provided the use or nonuse of the property be not contrary to good morals or the public welfare."
The court relied upon the case of Queensborough Land Company v. Cazeaux, 136 La. 724, 67 So. 641 (1915), and quoted as follows from Queensborough at 179 So.2d p. 842:
"To the second question we answer that, while the public policy of the state opposes the putting of property out of commerce, it at the same time favors the fullest liberty of contract (article 1764, C.C.) and the widest latitude possible in the right to dispose of one's property as one lists (article 491 C.C.), so long as no disposition is sought to be made contrary to good morals, public order, or express law."
Our jurisprudence contains many decisions where restrictions upon use of property have been found valid and enforceable. In the decision of 4626 Corporation v. Merriam, 329 So.2d 885 (La.App. 1st Cir. 1976), the court enforced a building restriction which required:
"All exterior signs shall be approved by the Architectural Control Committee." Id. at 887.
The defendant installed a sign without obtaining prior approval of the committee and the developer of the subdivision sued and obtained an injunction prohibiting the defendant from maintaining the sign which had not been approved by the committee. The appellate court gave the defendant 30 days to readjust the height of his sign to comply with the requirement of the Architectural Control Committee and in lieu of this ordered removal of the sign.
The provision in the deed requiring Patten to secure Bossier Center's consent to the erection of any structure is not contrary to public policy and for that reason invalid.

DID BOSSIER CENTER UNREASONABLY REFUSE TO CONSENT TO THE SIGN?
The permit for construction of the sign obtained by B & B from the State of Louisiana states that the sign will be 14 ft. *832 × 48 ft. and will be 10 ft. off the ground. There is evidence that the pole on which the sign will be mounted is of such size as to require the digging of a hole 11 ft. × 6 ft. × 15 ft. for the purpose of installing the sign pole. A structure consisting of a sign and pole evidenced by the above specifications necessarily will create some view obstruction to plaintiff's property from the Old Minden Road and from I-20, and may well otherwise detract from the small commercial complex contemplated by the present development plan. Under these circumstances the plaintiff was not unreasonable in withholding its consent to the proposed structure.

PATTEN'S DEMAND THAT HIS PROPERTY BE DECLARED FREE OF THE RESTRICTION
The use limitation Bossier Center placed in Patten's deed to the small strip of property was not pursuant to an overall plan or scheme in connection with the development of the larger tract. It does not fall within the category of a building restriction as approved in Queensborough, supra, and the long line of subsequent jurisprudence and the jurisprudential rules developed which were codified by Act. No. 170 of 1977 and set forth in LSA-C.C. arts. 775-783. Building restrictions are defined in LSA-C.C. art. 775 as follows:
"Building restrictions are charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements. The plan must be feasible and capable of being preserved."
Use limitations which are not created pursuant to a general plan have been construed to be predial servitudes which are enforceable against third persons who acquire the property in a deed subsequent to the deed wherein the servitude was created. In the case of McGuffy v. Weil, 240 La. 758, 125 So.2d 154 (1960), a use restriction applicable to only one lot was construed to be a C.C. art. 776 servitude "or real obligation running with the land which is binding on plaintiff herein". The deed wherein this plaintiff acquired the property contained no restrictions. The deed to plaintiff's ancestor in title contained the following language:
"That said property shall only be used for residential purposes and that all dwellings erected * * * must be so erected so as to face Stubbs Place (or Avenue).
It is understood that the foregoing restriction as to the use of the lastly described property shall constitute a covenant running with the land and shall be binding upon appearer and all subsequent owners thereof howsoever they may acquire." Id. at 156.
In the recent case of Richard v. Broussard, 378 So.2d 959 (La.App.3d Cir. 1979), the following restriction was contained in the deed to plaintiff's ancestor in title but it was not in plaintiff's deed of acquisition:
"It is understood and agreed by and between the parties to this sale that the... property shall be and remain residential property; that this stipulation shall be valid and binding upon the executors, administrators, heirs, successors and [word indistinct] of purchaser, and shall be enforced by the proper legal action." Id. at 963.
This use limitation was construed to create a predial servitude within the provisions of the new code articles on servitudes No. 731, 733, and 650 which were included within Act. No. 154 of 1977. The use restriction was enforced.
The use limitations incorporated in the deeds reviewed in McGuffy and Richard, supra, contained language that clearly expressed the intent that the restriction was upon the property conveyed and was to follow it into the hands of subsequent transferees.
The limitation which we are here called upon to construe is "Vendee agrees not to erect any structure without written consent of Vendor." This provision expresses the intent that it is an agreement between the parties to the deed and does not indicate that it is to have an effect upon the use of the land after the vendee is divested of ownership.
*833 In Cambais v. Douglas, 167 La. 791, 120 So. 369 (1929), the deed wherein plaintiff's ancestor in title acquired the property contained the requirement that the purchaser:
"Erect on said premises a single residence." Id., 120 So. at 370.
The court interpreted the provision to create only a personal obligation applicable only to plaintiff's ancestor in title who agreed to it:
"An obligation to build a house is a personal one only, and does not bind the subsequent transferees of the property, who are not parties to the agreement." Id. at 371.
The court in LeBlanc v. Palmisano, 43 So.2d 263 (Orl.App.1949), held provisions in the building restrictions requiring consent of the subdivision creator for commercial use of any of the property not to be a covenant running with the land. The use limitation there construed provided:
"No commercial property shall be permitted to be constructed or occupied as such on this property except by written consent of the Claiborne Avenue Extension Realty Company, Inc." Id. at 264.
The court stated:
"In our opinion, however, a casual reading of this restriction indicates that it is not a covenant running with the land, but is a personal covenant between the vendor, Claiborne Avenue Extension Realty Company, Inc., and Henry M. Rahders, the predecessor in title of defendants." Id. at 265.
The court observed:
"Whether or not certain property in this subdivision shall be used for commercial purposes is contingent entirely upon the caprice of the Claiborne Avenue Realty Company, Inc., and, therefore, this covenant did not run with the land for the benefit of the purchasers or grantees of property in this subdivision." Id. at 266.
The intervenor personally obligated himself to erect no structures upon the premises without the consent of his vendor and he must comply with this use restriction. B & B, the lessee, "Possesses for and in the name of his lessor", LSA-C.C.P. art. 3656, and acquires its rights subject to the use limitation imposed upon its lessor. See Richard Taylor v. P. C. Mohan, 19 La.Ann. 324 (1867), wherein a lessee of a canal was required to use the canal subject to a foot bridge across it which its lessor had authorized the City of New Orleans to construct before the lease was executed.
See also Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964); Wolfe v. North Shreveport Development Company, 228 So.2d 148 (La.App.2d Cir. 1969), wherein the concept was recognized that the lessee acquires from the lessor only personal rights. The personal rights acquired by the lessee can be no greater than those of his lessor and are subject to all limitations affecting the lessor.
We conclude that the restriction contained in intervenor's deed is binding upon him and his lessee but is not a predial servitude or any other form of covenant running with the land. The trial court was correct in rejecting appellants' demand for damages and enjoining the construction of the sign.
We amend the judgment appealed from by adding the following paragraph:
IT IS FURTHER ORDERED that the following provision "Vendee agrees not to erect any structure without the written consent of the vendor" contained in the deed from Bossier Center, Inc. to Dewitt H. Patten, recorded under Date Registry No. 317064 of the conveyance records of Bossier Parish is not a predial servitude or any other form of covenant running with the land.
As AMENDED the judgment is AFFIRMED at appellants' cost.
NOTES
[1] LSA-C.C. art. 11-"Individuals can not by their conventions, derogate from the force of laws made for the preservation of public order or good morals.

But in all cases in which it is not expressly or impliedly prohibited, they can renounce what the law has established in their favor, when the renunciation does not affect the rights of others, and is not contrary to the public good."
[2] LSA-C.C. art. 12-"Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."