140 So.2d 377

Field V. GREMILLION et al.

v.

RAPIDES PARISH SCHOOL BOARD.

No. 45918.

April 30, 1962.

F. Jean Pharis, Dist. Atty., A. M. D'Angelo, Jules L. Davidson, Jr., Asst. Dist. Attys., for defendant-relator.

Downs & Gremillion, Alexandria, for plaintiffs-respondents.

HAMITER, Justice.

In this specific performance action plaintiffs seek to compel the Rapides Parish School Board to take from them title to Lots 7, 8 and 9 of Block 6 of the S. A. Guy's Magnolia Park Addition to the City of Alexandria in Rapides Parish, Louisiana, in accordance with defendant's written purchase agreement to pay therefor a cash consideration of $20,500. Their petition al-

leged that they have tendered a good, valid and merchantable title to the property, but that the board has refused to carry out the contract.

Answering, the defendant denied that the title was good and valid and admitted its repudiation of the agreement. Specifically, it averred that the title tendered is subject to a restrictive covenant in favor of three adjacent lots in the same subdivision which limits the use of the real estate sought to be purchased to residential purposes; that it could erect on the land only school buildings, it having no authority to construct residences; that the owners of the lots in favor of which the restriction runs have refused to waive their rights in and under the covenant; and that, therefore, "the title to the property * * * is suggestive of litigation, not merchantable, and not free and clear of encumbrances."

The case was tried on stipulations which set forth the existence of the mentioned restrictive covenant in plaintiffs' title, the fact that the board is prohibited from using the property for residential purposes, and the refusal of the owners of the adjacent three lots (who, incidentally, are not parties to this action) to waive their rights in and under the restrictive clause.

The district judge ordered the defendant to take title in accordance with the agreement, the written reasons assigned in support of his judgment being that the restric-tive covenant could not prevent use of the land by defendant for school purposes and that the question of whether it would have to pay damages to the owners of the adjacent lots (in favor of which the covenant runs) was not raised by the pleadings.

On appeal the Court of Appeal, Third Circuit of Louisiana, affirmed the judgment ordering specific performance. However, it ruled (unlike the trial court) that the board's use of the property for school purposes, although inconsistent with the requirement contained in the restrictive covenant, would not render such public body liable for any damages which might be sustained by the owners of the adjacent lots as a result thereof. See 134 So.2d 700.

At the instance of the defendant we granted certiorari.

Here, plaintiffs seem to concede that if the instant suit were against a private individual he, in view of the aforementioned circumstances, could not be compelled to carry out the purchase agreement; that the restrictive covenant would constitute a substantial and serious cloud on the title. The position taken by them appears to be that since this defendant is a governmental agency—a part of the sovereign vested with the power of eminent domain—the restriction in question has no effect whatsoever as to such board. In this connection the brief of their counsel states, among other things, the following: "* * * The whole ques-

tion involved * * * is whether *the School Board's* use of the property for school purposes *in violation of an otherwise binding restriction that such property be used only for residential purposes* constitutes a taking or damaging of a property right of the other lot owners of the subdivision so as to entitle them to compensation for such taking or damaging of their public rights. * * * Restrictions are merely regulations against a purchaser whereby he obligates himself to all the other owners to refrain from doing those things that he is forbidden to do. Necessarily, under the law and Constitution, the sovereign cannot be prevented from performing the duties imposed upon it by the same Constitution, and therefore no covenant could legally prohibit the sovereign from exercising the right of eminent domain. * * *" (Italics ours)

But plaintiffs' apparent position overlooks the important fact that in the present litigation the owners of the adjacent lots are not attempting to enforce their rights in and under the restrictive covenant as against the governmental agency. Before us is a specific performance action in which plaintiffs seek to compel the defendant school board to take title to land admittedly encumbered with a valid building restriction in favor of other property owned by persons who are not parties to the cause. And the only question presented by it is whether such title defect is so substantial as to suggest the probability of future serious litigation respecting the proposed purchaser's use of the property.

In Schaub et al. v. O'Quin, 214 La. 424, 38 So.2d 63 we discussed the principal considerations involved in suits of this nature and made reference to numerous cases dealing therewith. In this connection we noted that in some actions the court had ordered specific performance when it deemed the "legal questions raised by the respective proposed vendees to be *free of doubt* and the *objections obviously groundless*". However, we also pointed out that in numerous others the specific performance relief sought was denied (not because the court concluded that the titles tendered were *actually* defective) " * * * on the theory that third persons, not parties to the actions and unaffected by the judgments to be rendered, could thereafter make claims of a substantial nature against the titles and further subject the defendants to serious litigation. The purchaser, reasoned the court, is entitled to receive a complete, valid, unclouded title; he cannot be compelled to accept a title burdened with a claim having a substantial basis and, therefore, which is suggestive of serious future litigation; his agreement provided for the purchase only of the property, not the property plus a probable law suit. [Here the cases are cited.]"

The present action, we think, is governed by the last mentioned group of cases.

(At this point we should like to state that the particular issue of damages that will in all probability arise between the owners of the three adjoining lots and the school board, if and when the latter acquires the property in question—by expropriation or otherwise—and uses it for school purposes, has not been passed upon by our appellate courts and consequently is res novo; and, further, that none of the observations made hereinafter are intended to constitute a determination by us of such an issue, they serving only to point up the fact that the restrictive clause under consideration renders the tendered encumbered title suggestive of serious future litigation.)

■ It is firmly established in our jurisprudence that, as a general rule, a restriction such as the one involved here is a covenant running with the land; that it is a real right; and that it is susceptible of judicial enforcement as a sort of servitude permitted under the articles of our Civil Code. See Ouachita Home Site & Realty Company, Inc. v. Collie et al., 189 La. 521, 179 So. 841, Holloway v. Ransome et al., 216 La. 317, 43 So.2d 673, and the authorities cited in those cases. Whether a public body which acquires and uses for a public purpose land so encumbered is excepted from such general rule has not been judicially determined heretofore (as pointed out above) in this state.

However, the precise issue has been raised and passed upon in many other jurisdictions with diametrically opposing and hopelessly conflicting results. And this conflict has been recognized in all of the texts dealing with the problem which we have examined (among these are 2 Nichols on Eminent Domain, Third Edition, Volume 2, pages 81 et seq., Section 5.73(1) and (2); 29 C.J.S. verbo Eminent Domain § 104; and 18 American Jurisprudence verbo Eminent Domain, Section 157), as well as in virtually all of the applicable decisions from other states.

In the work by Nichols, cited supra, the author comments: "The majority view holds that such a restriction, often characterized as an equitable servitude, constitutes property in the constitutional sense and must be compensated for if taken. Such restrictions constitute equitable easements in the land restricted, and when such land is taken for a public use that will violate the restrictions, there is a taking of the property of the owners of the land for the benefit of which the restrictions were imposed. The owners of such property cannot maintain proceedings for damages against the original owner or enforce the restrictions against the condemnor, but they are entitled to an award of compensation for the destruction of their easements."

Nichols also recognizes the strong minority view, which is based on several different theories, in the following language: "On the other hand, objection has been

raised to paying more than such value for all the interests in the property taken and by reason thereof negative easements belonging to other owners have been taken without payment of compensation.

"It has been argued that such restrictions were not intended to apply as against public improvements; —that, since all property is held subject to the power of eminent domain, the rights of the condemnor are impliedly excepted from the operation of the restrictive covenant.

"It has further been held that such restrictions could not possibly inhibit the action of the sovereign because any such attempt would be void as against public policy since they constitute an attempt to prohibit the exercise of the sovereign power of eminent domain. * * *

"Denial of compensation has also been justified upon the ground that such restrictions do not constitute property at all, but are merely contract rights which need not be compensated for in eminent domain. Such contract rights, it has been reasoned, are enforceable as against individuals but not as against the state."

With respect to the mentioned numerous conflicting decisions from other jurisdictions it may be said that the reasons supporting them suggest that solution of the problem is not an easy one, for considered and discussed by the courts were various intricate legal concepts and equitable principles favorable to the respective views.

■ From all of which it can only be concluded that the encumbrance in the title tendered by these plaintiffs to this defendant constitutes a substantial defect—one suggestive of serious litigation; and that if the board is ordered in this action to take title and pay the agreed cash consideration of $20,500 there is a strong probability that it will be acquiring a law suit along with the property, because the parties actually affected by a determination of the mentioned issue of damages—the owners of the lots in favor of which the covenant runs and who have refused to waive their rights—would not be bound in any manner by the order, they not being parties hereto.

Appropriate here, furthermore, are the following observations contained in Schaub v. O'Quin, supra (a specific performance action to compel a proposed purchaser to take title to property in which certain minors, not parties to the litigation, had possible interests): "Moreover, a decision in favor of these plaintiffs, amounting to the confirming of their title as against the unrepresented minors and the compelling of defendant to accept the property and pay the agreed purchase price, could possibly lead to the experiencing of undue hardships by either the minors or this defendant. If in the future, following such a decision,

the minors attempt to litigate their claim, naturally the court would be inclined to respect its previously rendered ruling, in which event they would be seriously handicapped in urging their demands. On the other hand, should the minors in future litigation succeed in setting aside the judgment confirming the title of these plaintiffs, the defendant will have to relinquish the property (which the court ordered accepted) and there will be left to him the sometimes difficult task of attempting to obtain reimbursement from his vendors of the sizable purchase price paid."

The reasoning just quoted is equally applicable to this cause. If we should conclude herein that a building restriction covenant is wholly ineffective as to public bodies, and accordingly rule in favor of these plaintiffs ordering this defendant to take title to the property in question pursuant to its purchase agreement, naturally we would be inclined to respect that holding in the future if and when the owners of the adjoining lots seek to enforce whatever rights they have, in which event we will have prejudged their claims without giving them the opportunity of being heard. After such a holding if, on the other hand, those lot owners convince us in future litigation that we erred the board then may have to compensate them for a sum which would be in addition to the sizable purchase price theretofore paid or conceivably may even

be enjoined from using for school purposes the property acquired by and through a contract (as distinguished from an expropriation thereof).

For the reasons assigned the judgment of the Court of Appeal is reversed and set aside and plaintiffs' suit is dismissed. All costs of the proceedings shall be paid by plaintiffs.