# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 28, 2013

No. 11-31167

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.073 acres of land, more or less, situate in Parishes of Orleans and Jefferson, State of Louisiana, et al.,

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.071 acres of land, more or less, situate in Parishes of Orleans and Jefferson, State of Louisiana, et al.

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

No. 11-31167

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.139 acres of land, more or less, situate in Parish of Orleans, State of Louisiana, et al

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.134 acres of land, more or less, situate in Parishes of Orleans and Jefferson, State of Louisiana, et al.

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

No. 11-31167

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.135 acres of land, more or less, situate in Parishes of Orleans and Jefferson, State of Louisiana, et al.

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.072 acres of land, more or less, situate in Parishes of Orleans and Jefferson, State of Louisiana, et al.

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

No. 11-31167

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

0.153 acres of land, more or less, situate in Parishes of Orleans and Jefferson,
State of Louisiana, et al.

Defendants

MARINER'S COVE TOWNHOMES ASSOCIATION, INCORPORATED,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

Before STEWART, Chief Judge, and KING and OWEN, Circuit Judges.

PER CURIAM:

In this eminent domain case, Appellant Mariner's Cove Townhomes
Association appeals the district court's grant of judgment on the pleadings for
the United States. The district court held that the Association was not entitled
to just compensation for the diminution of its assessment base resulting from the
government's condemnation of fourteen properties in the Mariner's Cove
Development. The question before us is whether the loss of the Association's
right to collect assessments on those properties requires just compensation
under the Takings Clause of the Fifth Amendment. For the following reasons,
we hold that this right was not compensable, and AFFIRM the district court's
judgment.

No. 11-31167

## I. FACTS AND PROCEDURAL HISTORY

Mariner's Cove Development ("Mariner's Cove") is a residential community consisting of fifty-eight townhomes located near Lake Pontchartrain and the 17th Street Canal. The Mariner's Cove Townhomes Association ("MCTA") is a homeowner's association and non-profit corporation that provides residential services to the townhouses in Mariner's Cove. In exchange for the services provided, MCTA periodically collects assessments from each of the fifty-eight property owners pursuant to the "Declaration of Servitudes, Conditions and Restrictions of Mariner's Cove Townhomes Association, Inc." ("Declarations"), which was recorded on July 28, 1977, and created servitudes and covenants, as well as other conditions and obligations that run with the land. The Declarations provide that each owner of a lot in Mariner's Cove pays a proportionate 1/58 share of the expense of maintenance, repair, replacement, administration, and operation of the properties in Mariner's Cove.

Mariner's Cove suffered substantial damage from Hurricane Katrina. After Katrina, the United States Army Corps of Engineers ("Corps") began to repair and rehabilitate the levee adjacent to Mariner's Cove, and began to construct an improved pumping station at the 17th Street Canal. The Corps later determined that it needed to acquire fourteen of the fifty-eight units in Mariner's Cove to facilitate its access to the pumping station.

While the government was negotiating the acquisition of those properties with their owners, MCTA claimed that it had an interest in those properties based upon the rights and obligations conferred by the Declarations. Specifically, MCTA claimed that it was entitled to just compensation for the loss of its right to collect assessments on the properties, as set forth in the Declarations. The government reached agreements with each of the landowners for the purchase of the fourteen properties, but did not resolve MCTA's claim.

5

No. 11-31167

In June 2009, the government filed condemnation actions against each of the fourteen properties. The government named MCTA as a purported owner in each proceeding based on MCTA's claimed interest. The district court issued an order in each proceeding granting the United States possession of the fourteen properties. It later consolidated the condemnation actions.

After the government took possession of the properties, MCTA filed an answer to the government's complaints in condemnation.[1] MCTA claimed that the government was obligated to pay the yearly assessments arising from the Declarations since the Corps's occupation in September 2005, and for the reasonable lifetime of a townhomes association such as Mariner's Cove, as compensation for the diminution of its assessment base. In the alternative, MCTA claimed that it is entitled to a lump sum payment which, if invested conservatively and adjusted for inflation, is a principal amount capable of generating annual interest sufficient to make up the shortfall in funds owed.

In response to the MCTA's answer, the government filed a motion for judgment on the pleadings, arguing that MCTA had no continuing right to levy assessments on the condemned properties because the United States acquired perfect title to them under eminent domain. The government also argued that the losses MCTA claimed were not compensable under the Fifth Amendment because the losses were merely incidental to the taking, as MCTA had no ownership interest in the fourteen properties themselves. MCTA opposed and moved for partial summary judgment, requesting that the district court recognize MCTA's property rights and the obligation of the government to provide just compensation for the taking of these rights.

The district court granted the government's motion, and consequently it dismissed MCTA's motion as moot. The district court found that "once the

---

[1] MCTA answered as an interested party under Federal Rule of Civil Procedure 71.1.

declaration of taking and the deposit for just compensation are filed, the property vests in the United States under the Declarations of Takings Act," and all existing possessory and ownership interests not specifically excepted are extinguished. Because the interests alleged by MCTA were not excepted, the district court found that MCTA had no present possessory interest in the condemned properties. The district court then turned to the question whether MCTA's interest in the assessments prior to the governmental taking was compensable under the Takings Clause.

Observing that this circuit has not ruled whether the diminution of an assessment base is a compensable loss under the Takings Clause, the district court considered the case upon which MCTA chiefly relies: *Adaman Mutual Water Co. v. United States*, 278 F.2d 842 (9th Cir. 1960). The district court ruled that MCTA failed to show that its interest was compensable because *Adaman* was inapposite, and because MCTA did not cite any case adopting the *Adaman* holding other than one factually similar to *Adaman*. Finally, the district court gave two reasons why Louisiana state law does not disturb the court's ruling that MCTA's interest was not compensable: (1) Louisiana courts have not "addressed whether building restrictions that require affirmative action, or building restrictions in general, are a compensable property interest," and (2) "federal law controls on the issue of compensability."

The district court entered its judgment on November 18, 2011, and MCTA timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review de novo a grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *United States v. Renda Marine, Inc.*, 667 F.3d 651, 654 (5th Cir. 2012). We look only to the pleadings and accept all allegations contained therein as true. *Id.* The nonmovant, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Doe v. MySpace, Inc.*, 528 F.3d 413,

418 (5th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of material fact and only questions of law remain." *Brittan Commc'ns Int'l Corp. v. Sw. Bell Tel. Co.*, 313 F.3d 899, 904 (5th Cir. 2002). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Id.* (quoting *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)).

## III. DISCUSSION

This case presents a question of first impression in this circuit: whether the federal government must provide just compensation under the Takings Clause of the Fifth Amendment when it condemns property burdened by a plaintiff's right to collect assessments and thereby diminishes the plaintiff's assessment base. In granting the government's motion for judgment on the pleadings, the district court held that MCTA was not entitled to just compensation for the loss of its assessment base that resulted from the government's condemnation of properties in Mariner's Cove. We hold that MCTA's right to collect assessments is not a compensable property interest under the Constitution, and affirm the district court's judgment.

### A.    Takings Clause Principles

The Takings Clause of the Fifth Amendment provides that private property shall not be taken for public use without just compensation. "The critical terms are 'property,' 'taken' and 'just compensation.'" *United States v. Gen. Motors Corp.*, 323 U.S. 373, 377 (1945).

Discussing the Constitution's use of the term "property," the *General Motors* Court stated:

> When the sovereign exercises the power of eminent domain it substitutes itself in relation to the physical thing in question in place of him who formerly bore the relation to that thing, which we denominate ownership. In other words, it deals with what lawyers

8

term the individual's "interest" in the thing in question. . . . The constitutional provision is addressed to every sort of interest the citizen may possess.

*Id.* at 378 (footnote omitted). "Though the meaning of 'property' . . . in the Fifth Amendment is a federal question, it will normally obtain its content by reference to local law." *United States ex rel. Tenn. Valley Auth. v. Powelson*, 319 U.S. 266, 279 (1943); *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984) ("[W]e are mindful of the basic axiom that '[p]roperty interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (second and third alterations in original) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980) (internal quotation marks and citation omitted))). Thus, Louisiana law governs whether MCTA's right to collect assessments is a property interest. *See United States v. 131.68 Acres of Land*, 695 F.2d 872, 875 (5th Cir. 1983).

The *General Motors* Court also expounded on the meaning of the term "taken" as it appears in the Takings Clause:

> In its primary meaning, the term "taken" would seem to signify something more than destruction, for it might well be claimed that one does not take what he destroys. But the construction of the phrase has not been so narrow. The courts have held that the deprivation of the former owner rather than the accretion of a right or interest to the sovereign constitutes the taking. Governmental action short of acquisition of title or occupancy has been held, if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter, to amount to a taking.

323 U.S. at 378. Contrary to the government's assertion at oral argument, we understand takings analysis to be centered on the deprivation of a former owner's property interest, and not on the accretion of that interest to the government. The Supreme Court in *General Motors* emphasized that a

constitutional taking only occurs with respect to property, and not with collateral, non-property interests:

> whether the sovereign substitutes itself as occupant in place of the former owner, or destroys all his existing rights in the subject matter, the Fifth Amendment concerns itself solely with the "property," i.e., with the owner's relation as such to the physical thing and not with other collateral interests which may be incident to his ownership.

*Id.* In short, the government is required to provide just compensation if the interest for which compensation is sought is a property interest or right, and that interest has actually been taken.[2] *Id.* at 377-78.

**B.    MCTA's Right To Collect Assessments**

This case turns on whether MCTA's right to collect assessments is a compensable property right under the Takings Clause. This question has two parts: whether the right to collect assessments is a property right, and if so, whether it is compensable under the Takings Clause.

*1.    Intangible Property*

We begin by addressing whether MCTA's right to collect assessments is property. The district court, in its ruling, did not find that this right was not property, and the government has not argued to the contrary. Indeed, there is good reason to find that MCTA's right to collect assessments is property.

Louisiana law suggests that this right is called a building restriction. First, it is necessary to explain what "building restriction" means in the language of Louisiana's civil law system. Under Louisiana law, building restrictions are "incorporeal immovables." La. Civ. Code art. 777. "[I]ncorporeal immovables" are "[r]ights and actions that apply to immovable things"). La. Civ. Code art 470. "Immovables" simply means property that is not a "movable." La.

---

[2] The *General Motors* Court understood "just compensation" in ordinary cases to be the fair market value of the interest taken. 323 U.S. at 379 ("In the ordinary case, for want of a better standard, market value, so-called, is the criterion of that value.").

No. 11-31167

Civ. Code art. 448 ("Things are divided into . . . movables and immovables."). And "movables" are what the name suggests: "things . . . that normally move or can be moved from one place to another." La. Civ. Code art. 471. Thus, "immovables" refers to a broad category of immovable property that includes tracts of land and their component parts. La. Civ. Code art. 462. The modifier "incorporeal" simply means "intangible." *See S. Cent. Bell Tel. Co. v. Barthelemy*, 643 So. 2d 1240, 1244 (La. 1994) ("[T]he civilian concept of corporeal movable encompasses all things that make up the physical world; conversely, incorporeals, i.e., intangibles, encompass the non-physical world of legal rights."); *see also* La. Civ. Code art. 461 ("Incorporeals are things that have no body, but are comprehended by the understanding such as . . . servitudes [and] obligations . . . ."). By logical inference from the definitions at hand, an intangible right that applies to a tract of land is an incorporeal immovable.

In *Tri-State Sand & Gravel, L.L.C. v. Cox*, a Louisiana appeals court confirmed that under Louisiana law, one duty that building restrictions may impose on owners of real property is the affirmative duty to pay assessments. 871 So. 2d 1253, 1256 (La. Ct. App. 2004). Louisiana statutory law supports recognition of the affirmative duty to pay assessments as a building restriction. *See* La. Civ. Code art. 778 ("Building restrictions may impose on owners of immovables affirmative duties that are reasonable and necessary for the maintenance of the general plan."); *Oakbrook Civic Ass'n, Inc. v. Sonnier*, 481 So.2d 1008, 1010 (La.1986) (same); *see also* 4 La. Civ. L. Treatise, Predial Servitudes § 195 (3d ed.) ("Provisions that each purchaser of a lot in a subdivision shall automatically become a member of a corporation formed to provide maintenance of the common grounds, and that each member shall be subject to an annual assessment, have been enforced as reasonable and necessary."). Thus, the right to collect assessments is a building restriction under Louisiana law, and by extension, an intangible (incorporeal) right.

11

No. 11-31167

In common law terminology, building restrictions are real covenants.[3] Louisiana caselaw recognizes prohibitive building restrictions as restrictive covenants. *Nepveaux v. Linwood Realty Co.*, 435 So.2d 589, 593 (La. Ct. App. 1983), *writ denied* 441 So.2d 750 (La. 1983) (describing building restriction that restricted property usage to residential purposes only as a "restrictive covenant"). Restrictive covenants, by definition, are a type of real covenant.[4] Because MCTA's right to collect assessments is an affirmative building restriction, it seems inappropriate to cast it into the negative mold of a restrictive covenant. Rather, it follows that if negative building restrictions are restrictive covenants, then affirmative restrictions are affirmative covenants. Moreover, Louisiana caselaw recognizes the right to collect assessment fees as a covenant that runs with the land. *Town S. Estates Homes Assoc., Inc. v. Walker*, 332 So.2d 889 (La. Ct. App..1976). Thus, we find that MCTA's right is best understood as a building restriction, but more generally may be viewed—in terms of its common law analogue—as a real covenant.

### 2. Compensability

Having found that MCTA's right to collect assessments is a property interest, we now turn to the question whether it is compensable. One of the government's main arguments on appeal is that the loss of MCTA's assessment

---

[3] The record indicates that MCTA's right to collect assessments was made appurtenant to the properties in Mariner's Cove through the Declarations. Thus, like real covenants generally, MCTA's right to collect assessments runs with the land. *See, e.g.*, 20 Am. Jur. 2d Covenants, Etc. § 18 (2012) ("A real covenant runs with the land, while a personal covenant usually does not run with the land." (footnotes omitted)).

[4] *Compare* Black's Law Dictionary 421 (9th ed. 2009) (defining "restrictive covenant" as "[a] private agreement, [usually] in a deed or lease, that restricts the use or occupancy of real property"), *with id.* (defining "real covenant" or "covenant running with the land" as "[a] covenant intimately and inherently involved with the land and therefore binding subsequent owners and successor grantees indefinitely").

base was incidental to the condemnation, and thus barred by the consequential loss rule. We agree, and affirm the district court's judgment on this basis.

a.     The Consequential Loss Rule

In *General Motors*, the Supreme Court explained the consequential loss rule as follows:

> The sovereign ordinarily takes the fee. The rule in such a case is that compensation for that interest does not include future loss of profits, the expense of moving removable fixtures and personal property from the premises, the loss of good-will which inheres in the location of the land, or other like consequential losses which would ensue the sale of the property to someone other than the sovereign. . . . [T]he courts have generally held that [such losses] are not to be reckoned as part of the compensation for the fee taken by the Government. . . . Even where state constitutions command that compensation be made for property "taken or damaged" for public use, as many do, it has generally been held that that which is taken or damaged is the group of rights which the so-called owner exercises in his dominion of the physical thing, and that damage to those rights of ownership does not include losses to his business or other consequential damage.

323 U.S. at 379-80 (footnote omitted). The *General Motors* Court contrasted compensable losses of property ("rights of ownership") with noncompensable losses of interests other than property. In *Adaman*, the Ninth Circuit briefly described this rule as requiring that "the Government . . . pay for all tangible interests actually condemned and for intangible interests directly connected with the physical substance of the thing taken." *Adaman*, 278 F.2d at 845.

We recognize that the cases the government cites in support of its argument do not concern losses of property. They concern business losses and frustration of contracts. *See Mitchell v. United States*, 267 U.S. 341, 343 (1925) (destruction of a business growing and canning a variety of corn that grew on condemned land was not a compensable loss); *Omnia Commercial Co. v. United States*, 261 U.S. 502, 508-09 (1923) (impairment of a commercial steel contract

was not compensable); *Bothwell v. United States*, 254 U.S. 231, 232 (1920) (loss resulting from a sale of cattle below fair market value after the construction of a government dam flooded farmland was not compensable); *Hooten v. United States*, 405 F.2d 1167, 1168 (5th Cir. 1969) (per curiam) (frustration of rent collection contracts resulting from condemnation of tenement properties was not compensable). Nevertheless, we find that the consequential loss rule applies because MCTA's right to collect assessments is a real covenant that functions like a contract and, in the words of the *Adaman* court, is not "directly connected with the physical substance of the [land]." 278 F.2d at 845.

Neither this court nor Louisiana courts have ruled whether the right to collect assessments, or real covenants generally, are compensable under the Takings Clause.[5] Nor is there relevant statutory law. Moreover, the decisions in other states addressing this question are legion and conflicting.[6] Various texts recognize the interjurisdictional conflict on this issue, the most useful being Nichols on Eminent Domain. 2 Nichols on Eminent Domain § 5.07[4], p. 5–366-72 (3d ed. 2012). "The majority view holds that a restrictive covenant or equitable servitude constitutes property in the constitutional sense and must be

---

[5] Louisiana courts have addressed whether use restrictions—a type of restrictive covenant—are compensable interests, finding that they are not. *See Gremillion v. Rapides Parish Sch. Bd.*, 134 So. 2d 700, 703 (La. Ct. App. 1961), *rev'd on other grounds*, 140 So. 2d 377 (La. 1962); *Hosp. Serv. Dist. No. 2 v. Dean*, 345 So. 2d 234, 237 (La. Ct. App. 1977) ("We now reaffirm the reasoning of Gremillion and conclude that the appellants are not entitled to compensation for the loss of their right to enforce the restrictive covenants."). The reasoning in both cases is twofold: (1) "any restriction that property cannot be used for governmental purposes . . . is unenforceable ab initio," and may be "void as against public policy"; (2) "[t]he state's right to acquire such land for [public] purposes cannot be restricted by a private contract between private parties, to which the state is not a party; nor can such a private contract impose upon the state liability beyond that allowed in the absence of the contract." *Dean*, 345 So. 2d at 236-37 (quoting *Gremillion*, 134 So. 2d at 702).

[6] *See* 2 Nichols on Eminent Domain § 5.07[4], p. 5–366-72 (3d ed. 2012) (listing cases reaching conflicting holdings on the issue of compensability of restrictive covenants).

compensated for if taken."[7] *Id.* § 5.07[4][a], p. 5–367-69. However, there is a strong minority view that these interests are not compensable. *Id.* § 5.07[4][b], p. 5–370-72. Several theories grounded in public policy concerns support the minority view.[8] One such theory is rooted in the concern that private covenants might unduly burden the government's ability to exercise its power of eminent domain. *See id.* § 5.07[4][b], p. 5–370-71. Another theory is that real covenants are akin to contracts; that no contract of private persons can make acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, a taking; and that "contracts purporting to do this are void, as against public policy." *United States v. Certain Lands (In re Newlin)*, 112 F. 622, *aff'd*, 153 F. 876 (C.C.R.I. 1907); *see also* 2 Nichols on Eminent Domain § 5.07[4][b], p. 5–371 ("Denial of compensation has also been justified on the ground that these restrictions do not constitute property at all, but are merely

---

[7] We recognize that our discussion of Nichols concerns restrictive covenants, and that we have defined MCTA's right as a real covenant. We previously highlighted the distinction between these terms for precision's sake, as restrictive covenants are merely a species of real covenants. *See* Black's Law Dictionary 421 (9th ed. 2009) (defining these terms). However, because these forms of property are so closely related, the reasons for denying compensation for restrictive covenants extends to the type of real covenant at issue in this case.

[8] Nichols summarizes these theories as follows:

Some argue that restrictive covenants are not property interests and may be taken without payment of compensation. The basis of this claim is that private covenant restrictions were not intended to apply against public improvements and that the rights of the condemnor are impliedly excepted from operation of the restrictive covenant.

Other courts have held that restrictive covenants cannot be property because they would limit the power of a legislature; any such limitations would be void as against public policy since they constitute an attempt to prohibit the exercise of the sovereign power of eminent domain.

Another argument against viewing these covenants as property is that since the state has the power to condemn the fee before the imposition of a restrictive covenant, the placing of the additional burden on the land does not create a new compensable interest.

2 Nichols on Eminent Domain § 5.07[4][b], p.5–370-71.

contract rights that need not be compensated for in eminent domain." (citations omitted)). We share these concerns, and view the right to collect assessments, and similar real covenants, as fundamentally different in the takings context from other compensable intangible property, such as easements.[9]

MCTA's right to collect assessments is an affirmative real covenant: the Declarations provide that landowners in Mariner's Cove must pay assessment fees, which MCTA is entitled to collect. These assessments enable MCTA to maintain Mariner's Cove. But MCTA's right is unlike recognized forms of compensable intangible property, such as easements, in that it is not directly connected with the physical substance of the properties on which the assessments are made. The nature of the covenant between MCTA and the landowners in Mariner's Cove is functionally contractual. But for its inclusion in the Declarations, the real covenant for which MCTA seeks compensation would amount to nothing more than a service contract between the landowners in Mariner's Cove and MCTA, with periodic assessments paid in exchange for the maintenance of communal property. Viewed in this way, this case mirrors the situations in the consequential loss cases cited by the government.

We believe that recognizing MCTA's right as compensable under the Takings Clause would allow parties to recover from the government for condemnations that eliminate interests that do not stem from the physical substance of the land. This would unjustifiably burden the government's eminent domain power. In addition, if we were to recognize MCTA's right as compensable, we would give special status under the Takings Clause to what essentially is a contract, merely because it appears in a title document. Such a

---

[9] The general rule is that "[w]hen one parcel of land is subject to an easement in favor of another, and the servient tenement is taken for, or devoted to, a public use that destroys or impairs enjoyment of the easement, the owner of the dominant tenement is entitled to compensation." 2 Nichols on Eminent Domain § 5.07[2][b], p. 5–347.

formality alone cannot justify requiring the government to compensate MCTA for the loss of its ability to collect assessments on the condemned properties. In the absence of apposite federal and state law, these concerns guide our decision. Thus, we hold that MCTA's right to collect assessments is not a compensable interest under the Takings Clause, and that MCTA was not entitled to compensation for the loss of its assessment base.

   b. *Adaman*

Having set forth our view as to why MCTA's right is not compensable, we address MCTA's main argument: that *Adaman* is analogous to this case and thus we should apply the *Adaman* court's holding that the right to collect assessments is compensable. We believe these two cases are sufficiently similar that the *Adaman* court's reasoning informs our approach to this case. But as applied to the facts of the instant case, we find that the rationale in *Adaman* compels us to reach the opposite conclusion, namely, that MCTA's right to collect assessments is not compensable under the Takings Clause.

   i. Background

*Adaman* involved an agricultural project established in Arizona on dry land where surface water for irrigation was unobtainable. 278 F.2d at 843. Underground water from beneath the project lands "had to be pumped and distributed, and to provide this service to the small farms envisioned in the Project, at minimum cost, [Adaman], a mutual, non-profit corporation, was organized." *Id.* The owners of the land were entitled to one share of stock in Adaman for each acre of land owned. *Id.* at 843-44. Each share of stock entitled its owner to a prorata share of water. *Id.* at 844. Both water rights and stock were made appurtenant to the land upon which the water was to be used. *Id.* Further, under the plan:

> the stock and the land to which it [was] appurtenant [were] subject
> to prorata assessments to be made from time to time by [Adaman]

> to pay both for the capital investment in the irrigation facilities and for the operation and maintenance of the irrigation system. The assessments, once made, [became] a lien on the land and on the stock and water rights appurtenant thereto.

*Id.* No assessment could be made until the land was first cultivated. *Id.*

The United States brought condemnation proceedings against 8.3 percent of the land area within the project. *Id.* Adaman sued for compensation for its interest in the assessments, lost in district court, and appealed. *Id.* at 850. The Ninth Circuit determined that the only question raised on appeal was "whether or not [Adaman was] entitled to be compensated for the loss of a portion of Project land since the remaining area will be subject to increased assessments in the future to pay for the maintenance, replacement and operation of the communal irrigation system." *Id.* at 844. "In other words," the court wrote, "does the diminution of [Adaman's] assessment base constitute the taking of a compensable interest under the Fifth Amendment?" *Id.*

The Ninth Circuit found that the lower court was wrong to conclude that Adaman had lost no compensable interest in the form of its reduced assessment base. *Id.* at 850. The *Adaman* court was careful to note that its opinion rested on "the assumption that the land condemned and taken by the Government had corporate stock appurtenant to it and had also been brought under cultivation," which the court deemed important because "the stock subscription agreement itself created the equitable servitude in favor of other stockholding landowners, and the duty to pay assessments would not arise until the land to which it attached had actually been brought under cultivation." *Id.* Accordingly, the Ninth Circuit vacated the district court's judgment and remanded for "specific findings of fact on these crucial points." *Id.* The crux of *Adaman*'s holding was that "under the Fifth Amendment a restrictive covenant imposing a duty which runs with the land constitutes a compensable interest." *Id.* at 849.

No. 11-31167

### ii.    Application

We believe that the *Adaman* court correctly determined that the "pitfalls of the consequential loss doctrine are avoided" where "a direct connection with the physical substance [of the land] condemned" is established. *Id.* at 846. Because the subject matter in this case—the right to collect assessments—is analogous to that in *Adaman*, we find this rule to be applicable to the instant case, and therefore we apply it. However, we reach the opposite result of the *Adaman* court, and find that the consequential loss rule applies, because this case differs from *Adaman* in two important respects, both of which evince the absence of a direct connection between MCTA's right to collect assessments and the physical substance of the condemned properties.

First, in *Adaman*, the water company's right to collect assessments was directly connected to a tangible property right—the right to a prorata share of water—enjoyed by landowners in the agricultural project. MCTA's right to collect assessments does not correspond to a tangible property right of the landowners in Mariner's Cove. It is inaccurate to view both cases as merely involving an exchange of assessment fees for communal services. Whereas the assessment fees that MCTA collected were used to maintain communal structures (e.g., streets), the assessments collected by the water company not only were used to provide a service (irrigation at the lowest possible cost), *id.* at 847, but also enabled the landowners in the agricultural project to exercise the rights to the water underlying the project lands.[10] This direct connection between water rights and the right to collect assessments differentiates *Adaman* from the instant case because the assessments collected by MCTA do not allow the landowners in Mariner's Cove to enjoy a tangible right arising from the land.

---

[10] "The benefit derived from this servitude . . . is encompassed by the water rights appurtenant to each parcel and runs with the land to the same extent as does the burden to pay assessments." *Adaman*, 278 F.2d at 847.

19

No. 11-31167

Second, whereas MCTA collects assessments in order to collect trash, maintain community streets, and provide similar services, the water company in *Adaman* collected assessments in exchange for water that it extracted from underneath the properties burdened by the obligation to pay the assessments. *Id.* As the *Adaman* court noted, "the warranty deed and the agreement of sale used by the [original landowner] reserved to it the rights in whatever water lay underneath Project land." *Id.* The assessments in *Adaman* were made in exchange for a natural resource that was directly connected to the physical substance of the land in that it physically inhered in the land itself. MCTA points to nothing that would establish such a direct connection to the land. Because no direct connection existed in the instant case, we find that the consequential loss rule applies to MCTA's loss.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

20